21CV53225

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS

2021 SEP 24 P 3:3

JAMYA HAITH and EMMONIE HAITH, by and through their Guardian Ad Litem, ERICA CHAMBERS; and ERICA CHAMBERS, individually,

Plaintiffs,

v.

HARFORD MUTUAL INSURANCE GROUP, INC.; THE HARFORD MUTUAL INSURANCE COMPANY; CARLOS ALBERTO RAMIREZ; NC CHAMPIONS CONSTRUCTION, INC.; and BIG BOSS CONSTRUCTION, INC.

Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT**

**NOW COME** Plaintiffs, by and through counsel, seeking declaratory relief pursuant to N.C. Gen. Stat. § 1-253 *et seq*. and Rule 57 of the North Carolina Rules of Civil Procedure against The Harford Mutual Insurance Company and Harford Mutual Insurance Group, Inc., and allege as follows:

## NATURE OF THE CASE

1. This is an action for declaratory relief pursuant to N.C. Gen. Stat. § 1-253 *et seq*. and Rule 57 of the North Carolina Rules of Civil Procedure.

2. Plaintiffs seek a declaration that there is insurance coverage under two different insurance policies issued by Harford Mutual, identified below, in



EXHIBIT
A

connection with an automobile wreck that occurred on October 27, 2018, near Burlington, North Carolina, and resulting in a civil lawsuit filed by Plaintiffs in Randolph County, North Carolina, Superior Court, entitled: *Jamya Haith and Emmonie Haith, by and through their Guardian ad Litem, Erica Chambers; and Erica Chambers, Individually v. Carlos Alberto Ramirez, NC Champions Construction, Inc., and Big Boss Construction, Inc.*, File No. 19-CVS-2232 (hereinafter referred to as the "Underlying Action").

3. The injuries sustained by Plaintiffs in the Underlying Action were catastrophic and resulted in significant personal injury damages to Plaintiffs, including total medical bills in excess of $500,000.

4. Plaintiff Erica Chambers spent 34 days in the hospital. She broke bones throughout her body, including bones in her face, jaw, back, legs, and ribs. She was placed in a cranial halo for 3 months and has endured multiple surgeries with permanent placement of hardware inside her body to help her recover from her injuries. She suffered multiple permanent injuries and remains under medical care for injuries from the wreck.

5. Erica Chambers' two daughters were also injured in the collision: Emmonie Haith (now, 13 years old) suffered a head injury and continues to have memory problems today, and Jamya Haith (now, 15 years old) broke her leg. Both girls continue to be traumatized by the wreck.

6. The trial in the underlying action has been delayed several times due to COVID shutdowns or delays. It is currently scheduled for trial on Feb. 14, 2022.

## PARTIES

7. Plaintiff Jamya Haith is a minor child and resident of Randolph County, North Carolina, and appears herein by and through her duly appointed Guardian Ad Litem, Erica Chambers.

8. Plaintiff Emmonie Haith is a minor child and resident of Randolph County, North Carolina, and appears herein by and through her duly appointed Guardian Ad Litem, Erica Chambers.

9. Plaintiff Erica Chambers is the biological mother and natural guardian of Jamya and Emmonie and is a resident of Randolph County, North Carolina.

10. Harford Mutual Insurance Group, Inc. ("HMIG") is an insurance company with its principal place of business in Bel Air, Maryland. At all times relevant hereto, HMIG has been authorized to transact business in the insurance industry in North Carolina.

11. The Harford Mutual Insurance Company ("Harford Mutual") is an insurance company with its principal place of business in Bel Air, Maryland. At all times relevant hereto, Harford Mutual has been authorized to transact business in the insurance industry in North Carolina.

12. Upon information and belief, Harford Mutual is the underwriting insurance company that issued the insurance policies at issue. It is a subsidiary of HMIG.

13. Harford Mutual and HMIG will be referred to herein as the "Insurance Defendants."

14. Upon information and belief, Defendant Carlos Alberto Ramirez, (hereinafter "Defendant Ramirez") is a citizen and resident of Randolph County, North Carolina. Defendant Ramirez was the at-fault driver in the Underlying Action.

15. Defendant NC Champions Construction, Inc. (hereinafter "Defendant NC Champions") is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business located in Durham, NC. At the time of the wreck, Defendant NC Champions was a construction company that performed siding work. Today, it is no longer in business.

16. Roberto Hernandez, Jr., was the owner, president, and registered agent for Defendant NC Champions when the wreck occurred.

17. Defendant Big Boss Construction (hereinafter "Defendant Big Boss") is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business located in Durham, NC. Defendant Big Boss is a construction company. It owned the truck involved in the collision.

18. Daniel De La Rosa is the owner and president of Defendant Big Boss. His wife, Selene De La Rosa, is the registered agent for Defendant Big Boss.

19. Defendant Ramirez was at all times relevant hereto an agent, servant, and/or employee of, or a joint venture partner with Defendant NC Champions and/or Defendant Big Boss, and was acting in such capacity and in the course and scope of his employment, agency and/or joint venture with Defendant NC Champions and/or Defendant Big Boss.

20. Alternatively, Defendant Ramirez was at all times relevant hereto an independent contractor which Defendant NC Champions negligently hired or retained.

21. Defendants Ramirez, NC Champions, and Big Boss are all proper parties to this Declaratory Judgment Action because, as insureds under the insurance policies at issue, each is affected by any declaration in this action under N.C. Gen. Stat. § 1-260.

## JURISDICTION AND VENUE

22. Plaintiffs seek a declaratory judgment pursuant to N.C. Gen. Stat. § 1-253 *et seq.* and Rule 57 of the North Carolina Rules of Civil Procedure.

23. This Court has subject matter jurisdiction over this declaratory judgment action pursuant to N.C. Gen. Stat. §§ 1-253 *et seq.*, 7A-240, 7A-242, and 7A-243, as Plaintiffs seek, *inter alia*, a declaration of the parties' rights and obligations under a written contract of insurance in which each of the parties to this action are interested.

24. This Court has personal jurisdiction over all the parties to this action pursuant to *inter alia*, N.C. Gen. Stat. § 1-75.4.

25. Venue is proper in the Superior Court of Durham County, North Carolina pursuant to N.C. Gen. Stat. §§ 1-80 and 1-82.

26. This declaratory judgment action is currently ripe for adjudication, and any and all conditions precedent necessary for Plaintiffs' filing of this declaratory judgment action have been fulfilled.

## THE UNDERLYING LAWSUIT AND THE OCTOBER 27, 2018 WRECK

27. Plaintiffs commenced the Underlying Action in the General Court of Justice, Superior Court Division, of Randolph County, North Carolina on October 2, 2019.

28. A true and accurate copy of Plaintiff's Second Amended Complaint is attached hereto as Exhibit 1.

29. Plaintiffs asserted two claims for relief in the Underlying Action against Defendant Ramirez: negligence and parent's claim for minor's medical expenses.

30. Plaintiffs asserted three claims for relief against Defendant Big Boss: respondeat superior/vicarious liability, negligent entrustment, and parent's claim for minors' medical expenses.

31. Plaintiffs asserted five claims for relief against Defendant NC Champions: respondeat superior/vicarious liability, negligent hiring/retention, negligent entrustment, negligence *per se*, and parent's claim for minors' medical expenses.

32. As alleged in the Underlying Action, Defendant Ramirez crossed the centerline and hit Plaintiffs head-on, causing severe and permanent injuries to the Plaintiffs.

33. At the time of the wreck, Defendant Ramirez was an undocumented immigrant, did not possess a valid driver's license, and otherwise had no legal authority to operate vehicles in the United States.

34. When the wreck happened, Defendant Ramirez was on his way to a job site for Defendant NC Champions with the rest of his three-man crew, all of whom were undocumented and unlicensed.

35. The work truck involved in the wreck, which was operated by Defendant Ramirez, was registered to and owned by Defendant Big Boss.

36. A central dispute in the Underlying Action is the relationship between Defendant Ramirez and Defendants NC Champions and Big Boss Construction, and whether Defendant Ramirez was an employee and/or agent of Defendants NC Champions and/or Big Boss Construction at the time of the wreck.

37. Another central dispute is how Defendant Ramirez came to be driving the Big Boss truck at the time of the collision. Evidence developed in discovery in the Underlying Action demonstrates that Big Boss Construction allowed NC Champions to routinely use Big Boss trucks for the business of NC Champions, that Big Boss did not exercise reasonable care in overseeing its trucks loaned to NC Champions and/or to NC Champions' workers, and that Big Boss knew unlicensed drivers were operating its trucks.

**INSURANCE POLICIES**

38. Harford Mutual provided liability insurance to both Defendants Big Boss Construction and NC Champions.

39. Harford Mutual issued a commercial general liability policy to NC Champions with policy number 9180396.

40. This policy had liability limits of $1 million per occurrence and $2 million aggregate and a policy period of 10/17/2018 to 10/17/2019. The NC Champions policy is attached as Exhibit 2.

41. Per letter dated December 8, 2020, Harford Mutual denied coverage under the NC Champions policy because of an automobile exclusion. This letter is included as Exhibit 3.

42. Harford Mutual also issued a commercial general liability policy to Big Boss Construction ("the general liability policy") with policy number 9178686.

43. The Big Boss general liability policy had liability limits of $1 million per occurrence and $2 million aggregate and a policy period of 8/26/2018 to 8/26/2019.[1]

44. Harford Mutual issued a commercial excess umbrella liability policy to Big Boss ("the excess umbrella policy"). The excess umbrella policy number is 7981019, the policy period is 8/26/2018 to 8/26/19, and the aggregate limits are $2,000,000. Harford Mutual renewed this policy for the 8/26/2019 to 8/26/2020 period. The 2019-2020 policy provides the same coverage as the 2018-2019 period and uses the same language, forms, endorsements, and exclusions; its policy number is 7984663.

45. The excess umbrella policy's declaration pages and full policy is attached as Exhibit 4.

---

[1] Coverage of the underlying Harford Mutual commercial general liability policy for Big Boss Construction is not at issue in this Declaratory Judgment Action.

46. As it did with the NC Champions policy, Harford Mutual denied that its liability policies provided any coverage to Big Boss Construction because of an automobile exclusion. Harford Mutual's letter denying coverage to Big Boss Construction is included as Exhibit 5.

## COVERAGE UNDER THE BIG BOSS POLICY

47. Under N.C. Gen. Stat. § 58-3-1, North Carolina law governs the construction of the Harford Mutual policies.

48. The Big Boss excess umbrella policy provides broader coverage than the general liability policy through language stating that Harford Mutual will pay claims for bodily injury which are "covered by this policy but not covered by Underlying Insurance."

49. The "Underlying Insurance" is the general liability policy.

50. The general liability policy contains an automobile liability exclusion which includes entrustment of automobiles to others:

> **g. Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

51. The excess umbrella policy contains an automobile liability exclusion which does not include entrustment of automobiles to others:

## AUTOMOBILE LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

It is agreed this policy shall not apply to any liability for **bodily injury, personal injury** or **property damage** arising out of the ownership, maintenance, operation, use, **loading or unloading** of any **automobile**.

52. However, in sections not applicable to Plaintiffs' personal injury claims, the excess umbrella policy does exclude "entrustment to others" coverage for aircraft and watercraft:

3. Exclusions

This Insurance does not apply to:

h. **Bodily Injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and **loading or unloading.**

53. Harford's excess umbrella policy provides that "[w]ith respect to any auto . . . any person is an Insured while driving such auto or mobile equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the auto or registered mobile equipment."

54. The excess umbrella policy provides coverage for the Underlying Action because (1) the excess umbrella policy does not exclude coverage for negligent entrustment claims and provides coverage where the underlying policy does not; and (2) in the alternative, the difference in exclusion language between the general liability and excess umbrella policy creates an ambiguity.

## COVERAGE UNDER THE NC CHAMPIONS POLICY

55. Upon information and belief, by purchasing a commercial general liability policy for its business, NC Champions expected that the policy would provide coverage for all reasonably foreseeable claims against its business.

56. Upon information and belief, NC Champions relied on representations by agents of the Insurance Defendants that it had insurance which would cover its business from any reasonably foreseeable claims.

57. Harford Mutual's general liability policy for NC Champions includes an endorsement for Hired Auto and Non-Owned Auto Liability, Endorsement GLHM02.

58. The Hired Auto and Non-Owned Auto Liability endorsement extends coverage to "'bodily injury' or 'property damage' arising out of the maintenance or use of a 'hired auto' by you or your employees in the course of your business" and "arising out of the use of any 'non-owned auto' in your business by any person other than you."

59. The endorsement defines "hired auto" as "any 'auto' you lease, hire, or borrow" and a "non-owned auto" as "any 'auto' you do not own, lease, hire, or borrow which are used in connection with your business."

60. Hired Auto and Non-Owned Liability coverage would provide coverage for NC Champions under the facts of the Underlying Action.

61. The policy provides that the Hired Auto and Non-Owned Liability endorsement became effective on February 11, 2019, and that it became an amendment to the policy.

62. The policy also states that Harford Mutual will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury that "occurs during the policy period."

63. NC Champions' Harford general liability policy has a policy period of 10/17/2018 to 10/17/2019. The motor vehicle wreck occurred on 10/27/2018 and falls within the policy period. Because of this, the Hired Auto and Non-Owned Liability coverage applies to this claim.

64. In the alternative, to the extent that the Insurance Defendants argue the endorsement did not apply to incidents occurring on October 27, 2018, the language in the policy regarding whether Hired Auto and Non-Owned Liability coverage applies to the policy period and date of the incident is ambiguous and must be construed in favor of coverage for the insured.

## CAUSE OF ACTION
**(Declaratory Judgment)**

65. Plaintiffs incorporate by reference the foregoing allegations.

66. Pursuant to, and in accordance with, N.C. Gen. Stat. § 1-253 *et seq.*, a genuine, actual and justiciable controversy between and among the parties to this action has arisen and presently exists concerning the respective rights and obligations of Harford Mutual and the other Defendants in connection with the wreck and resulting Underlying Action.

67. Plaintiffs seek a declaration that the Harford Mutual commercial general liability policy issued to Defendant NC Champions and the excess umbrella liability policy issued to Defendant Big Boss Construction provide coverage for the injuries sustained by Plaintiffs in the wreck as alleged in the Underlying Action.

68. More specifically, Plaintiffs seek a declaration that coverage exists under Harford's excess umbrella policy with Big Boss Construction.

69. As set forth more fully above, coverage exists here because Plaintiffs' claims are within the scope of coverage set forth in Harford's excess umbrella policy, and the automobile exclusion in that policy does not exclude coverage for negligent entrustment claims.

70. More specifically, Plaintiffs also seek a declaration that the Hired Auto and Non-Owned Auto Liability endorsement of NC Champions' general liability policy provides coverage.

71. As set forth more fully above, coverage exists here because the policy provides that it covers occurrences happening during the policy period, the wreck occurred during the policy period, and the endorsement is part of the policy.

72. Plaintiff also seeks a declaration of the amount to be paid under each policy.

**WHEREFORE**, pursuant to N.C. Gen. Stat. § 1-253 *et seq.*, Plaintiffs pray for a judgment against the Defendants that includes the following relief:

1. The Court enter a judgment declaring that Harford Mutual has an obligation under the policies to make payments to Plaintiffs as entered in the

Underlying Action.

2. Pre-judgment and post-judgment interest as provided by law;

3. The costs of this action;

4. Trial by jury of all issues of fact so triable;

5. Plaintiffs' attorneys' fees; and

6. Such other and further relief as the Court may deem just and proper.

This the 20th day of September, 2021.

**LAW OFFICES OF JAMES SCOTT FARRIN**
*Attorneys for Plaintiff*

By: Coleman Cowan

Coleman M. Cowan (State Bar No. 21997)
Kaitlyn E. Fudge (State Bar No. 54829)
280 S. Mangum Street, Suite 400
Durham, North Carolina 27701
Telephone: (919) 688-4991
Facsimile: (919) 688-4468
ccowan@farrin.com
kfudge@farrin.com

STATE OF NORTH CAROLINA

COUNTY OF RANDOLPH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 2232

| | | |
|---|---|---|
| JAMYA HAITH and EMMONIE HAITH, by and through their Guardian Ad Litem, ERICA CHAMBERS; and ERICA CHAMBERS, individually,<br><br>Plaintiffs,<br><br>v.<br><br>CARLOS ALBERTO RAMIREZ, NC CHAMPIONS CONSTRUCTION, INC., and BIG BOSS CONSTRUCTION, INC.,<br><br>Defendants. | ) | **SECOND AMENDED COMPLAINT**<br>**(Jury Trial Demanded)** |

**NOW COME** Plaintiffs, by and through counsel, complaining of Defendants, and allege:

## PARTIES

1. Plaintiff, Jamya Haith, (hereafter, "Jamya") is a minor child and resident of Randolph County, North Carolina, and appears herein by and through her duly appointed Guardian Ad Litem, Erica Chambers.

2. Plaintiff, Emmonie Haith, (hereafter, "Emmonie") is a minor child and resident of Randolph County, North Carolina, and appears herein by and through her duly appointed Guardian Ad Litem, Erica Chambers.



PLAINTIFF'S EXHIBIT 1

and/or Defendant Big Boss, and was acting in such capacity and in the course and scope of his employment, agency and/or joint venture with Defendant NC Champions and/or Defendant Big Boss.

11. Alternatively, Defendant Ramirez was at all times relevant hereto an independent contractor which Defendant NC Champions negligently hired or retained.

## FACTS

12. The incident at issue in this lawsuit occurred in Alamance County, North Carolina.

13. On or about October 27, 2018, at approximately 10:55 a.m., Plaintiff Erica Chambers was operating a 2004 Chevrolet motor vehicle and traveling south on NC 49 in or near Burlington, North Carolina.

14. Plaintiffs Jamya and Emmonie Haith were passengers in the vehicle driven by their mother, Plaintiff Erica Chambers.

15. Also at that time and place, Defendant Ramirez was operating a 2017 Ford motor vehicle and traveling north on NC 49 in or near Burlington, North Carolina.

16. Also at that time and place, Defendant Ramirez did not have a valid driver's license and was not authorized to drive a motor vehicle in the United States.

17. The motor vehicle operated by Defendant Ramirez was registered to and owned by Defendant Big Boss.

25. At all times relevant hereto, Defendant Ramirez, owed a duty to Plaintiffs, as well as other motorists, to exercise reasonable care in the operation of the motor vehicle he was driving.

26. Defendant Ramirez had a duty to act reasonably and obey all rules, regulations, and laws pertaining to the operation of his vehicle in the interest of safety for himself and for others on and near the roadways he traveled.

27. Defendant Ramirez breached a duty of care owed to Plaintiffs, and operated the motor vehicle negligently, carelessly, recklessly, willfully, and wantonly in that he:

a. Failed to keep a proper lookout;

b. Failed to keep his vehicle under proper control;

c. Failed to keep his vehicle on the right half of the highway in violation of N.C. Gen. Stat. § 20-146;

d. Failed to yield the right-of-way to a vehicle approaching from the opposite direction, before attempting a left turn within an intersection in violation of N.C. Gen. Stat. § 20-155;

e. Operated his vehicle without a valid operator's license in violation of N.C. Gen. Stat. § 20-7(a);

f. Operated his vehicle in a careless and heedless manner and with willful or wanton disregard of the safety of others in violation of N.C. Gen. Stat. § 20-140(a);

g. Operated his vehicle without due caution and circumspection and in a manner as to endanger others, in violation of N.C. Gen. Stat. § 20-140(b); and

h. Was otherwise negligent as may be shown in discovery or proven at trial.

35. Defendant Big Boss is liable for Defendant Ramirez's negligent actions under the doctrine of *respondeat superior*.

36. As a direct and proximate result of Defendant Ramirez's actions, which are imputed to Defendant Big Boss, Erica Chambers suffered severe and permanent injuries, including, but not limited to, medical expenses, lost wages, loss of income, permanent scarring and disfigurement, and pain and suffering

37. As a direct and proximate result of Defendant Ramirez's actions, which are imputed to Defendant Big Boss, Plaintiffs Jamya and Emmonie Haith suffered severe and permanent injuries, including, but not limited to, medical expenses, scarring, and pain and suffering.

**THIRD CLAIM FOR RELIEF**
**RESPONDEAT SUPERIOR/VICARIOUS LIABILITY**
(Defendant NC Champions)

38. Plaintiffs incorporate by reference the allegations contained in all previous paragraphs into this Claim for Relief.

39. Defendant Ramirez operated the motor vehicle with the express and/or implied permission, authority, consent, and knowledge of Defendant NC Champions, and in furtherance of the interests of, and for the benefit of Defendant NC Champions.

40. At the time and place of the wreck at issue in this case, Defendant Ramirez was an agent, servant and/or employee of Defendant NC Champions, acting within the course and scope of such employment and/or agency.

Castillo. This arrangement and composition of the crew was known to Robert Hernandez, Jr., the owner of NC Champions. Upon information and belief, none of these men had a driver's license issued in the United States or were otherwise legally authorized to drive in the United States.

48. For several years before the collision at issue in this case, Defendant Ramirez and his co-worker Jose Miguel Mondragon Suarez traveled together to work for NC Champions at NC Champions work sites, together with another co-worker Jonathan Caleb Gonzales Castillo, an arrangement known to Roberto Hernandez, Jr., the owner of NC Champions.

49. On the day before the collision at issue in this case, Defendant NC Champions, through its owner Roberto Hernandez, Jr., provided the work crew, including Defendant Ramirez and Mondragon Suarez, with a motor vehicle to transport workers, materials, and/or equipment to an NC Champions worksite to perform work for NC Champions the following day.

50. Neither Defendant Ramirez nor Mondragon Suarez possessed legal authority to drive motor vehicles in the United States.

51. At the time of the collision at issue in this case, Defendant Ramirez along with his co-worker Jose Miguel Mondragron Suarez, was driving the motor vehicle provided to the work crew by NC Champions, and were on their way to work for NC Champions at an NC Champions work site.

Suarez, and providing them with a motor vehicle to drive to work for NC Champions, when NC Champions knew or reasonably should have known Defendant Ramirez and his co-worker, Jose Miguel Mondragon Suarez, were inexperienced, incompetent, unskilled, and unsafe drivers, and did not have legal authority to work, or operate motor vehicles, in the United States.

58. By providing Defendant Ramirez and his co-worker Jose Miguel Mondragon Suarez with a motor vehicle to drive to work for NC Champions, when NC Champions knew or reasonably should have known Defendant Ramirez and his co-worker, Jose Miguel Mondragon Suarez, were inexperienced, incompetent, unskilled, and unsafe drivers, and did not have legal authority to work, or operate motor vehicles, in the United States, it was reasonably foreseeable to NC Champions that a wreck such as the one at issue in this case could occur.

59. Defendant Ramirez' inexperience, incompetence, and lack of legal authority to drive in the United States was a proximate cause of Plaintiffs' injuries.

60. As a direct and proximate result of NC Champions' negligent hiring/retention of Defendant Ramirez and his co-worker, Jose Miguel Mondragon Suarez, Plaintiff Erica Chambers suffered severe and permanent injuries, including, but not limited to, medical expenses, lost wages, loss of income, permanent scarring and disfigurement, and pain and suffering.

61. As a direct and proximate result of NC Champions' negligent hiring/retention of Defendant Ramirez and his co-worker Jose Miguel Mondragon Suarez, Plaintiffs Jamya and Emmonie Haith suffered severe and permanent

67. Hernandez, Jr. did not ask Defendant Ramirez or Mondragon Suarez whether either was legally authorized to drive motor vehicles in the United States, or otherwise make reasonable inquiries into their authority or ability to drive motor vehicles, before providing the motor vehicle to the work crew.

68. When Hernandez, Jr. provided the motor vehicle to the work crew, he did not place any limitations on their use of the truck, or otherwise restrict their ability to determine who would drive it to the NC Champions work site the following day.

69. On the day of the collision at issue in this case, Mondragon Suarez asked Defendant Ramirez to drive the truck given to them by NC Champions to the NC Champions work site.

70. At the time of the collision at issue in this case, Defendant Ramirez was driving the motor vehicle provided to the work crew by NC Champions, and was on his way to work for NC Champions at an NC Champions work site.

71. Defendant NC Champions owed a duty to the motoring public to not authorize or permit any motor vehicle it owned or controlled to be driven by any person who had no legal authority to do so.

72. Defendant NC Champions breached this duty, and was negligent in giving possession of the motor vehicle to the work crew, including Defendant Ramirez and Mondragon Suarez before the collision at issue in this case, in violation of N.C Gen. Stat. § 20-34.

Haith suffered severe and permanent injuries, including, but not limited to, medical expenses, scarring, and pain and suffering.

**SIXTH CLAIM FOR RELIEF**
**NEGLIGENCE *PER SE***
(NC Champions)

77. Plaintiffs incorporate by reference the allegations contained in all previous paragraphs into this Claim for Relief.

78. Neither Mondragon Suarez nor Defendant Ramirez possessed legal authority to drive motor vehicles in the United States or North Carolina under the Uniform Driver's License Act, N.C. Gen. Stat. § 20-5 *et seq.*, or otherwise.

79. When NC Champions, through its owner, Hernandez, Jr., provided the motor vehicle to the work crew, he knew or reasonably should have known that Defendant Ramirez and his co-worker, Mondragon Suarez, were not legally authorized to work, or drive motor vehicles in the United States.

80. N.C. Gen. Stat. § 20-34 provides

> No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven by any person who has no legal right to do so or in violation of any of the provisions of [the Uniform Driver's License Act].

N.C. Gen. Stat. § 20-34.

81. Defendant NC Champions gave possession of the motor vehicle to the work crew, including Defendant Ramirez and Mondragon Suarez, before the collision at issue in this case, in violation of N.C Gen. Stat. § 20-34.

82. N.C. Gen. Stat. § 20-34 is a safety statute, intended to protect members of the motoring public, including Plaintiffs.

injuries, including, but not limited to, medical expenses, lost wages, loss of income, permanent scarring and disfigurement, and pain and suffering.

89. As a direct and proximate result of NC Champions' violation of N.C. Gen. Stat. § 20-34, Plaintiffs Jamya and Emmonie Haith suffered severe and permanent injuries, including, but not limited to, medical expenses, scarring, and pain and suffering.

**SEVENTH CLAIM FOR RELIEF**
**NEGLIGENT ENTRUSTMENT**
(Defendant Big Boss Construction)

90. Plaintiffs hereby incorporate by reference the allegations contained in all pervious paragraphs into this Claim for Relief.

91. Upon information and belief, at the time and place of the wreck at issue in this case,

a. Defendant Big Boss owned and was the registered owner of the motor vehicle operated by Defendant Ramirez;

b. Defendant Big Boss knew or should have known that Defendant Ramirez did not have a valid driver's license;

c. Defendant Big Boss voluntarily gave possession of the motor vehicle to Defendant Ramirez;

d. Defendant Ramirez was an unlicensed driver, not authorized to drive a motor vehicle in the United States, incompetent, habitually careless or reckless, and likely to cause injury to others in operating a motor vehicle; and

e. Defendant Big Boss knew, or by the exercise of due care should have known, that Defendant Ramirez was an unlicensed driver, not legally authorized to drive a motor vehicle in the United States, incompetent, habitually careless or reckless driver, and likely to cause injury to others in operating a motor vehicle.

92. Defendant Big Boss was negligent in giving possession of its motor vehicle to Defendant Ramirez.

above, and therefore her parent, Erica Chambers, continues and will continue to incur medical and other expenses for the treatment of the physical and emotional injuries suffered by Jamya as aforesaid.

100. Emmonie is currently thirteen (13) years old, is and will be a minor for several years, continues and will continue to require and receive treatment and services for the injuries sustained as a result of Defendants' negligence as alleged above, and therefore her parent, Erica Chambers, continues and will continue to incur medical and other expenses for the treatment of the physical and emotional injuries suffered by Emmonie as aforesaid.

101. As a direct and proximate result of Defendants' actions, including those which are imputed to Defendant NC Champions and/or Defendant Big Boss, Plaintiff Erica Chambers has incurred and will continue to incur expenses for medical treatment and other services on behalf of, and as the parent of Jamya and Emmonie Haith.

**COMPENSATORY DAMAGES**

102. Plaintiffs hereby incorporate by reference the allegations contained in all previous paragraphs as if fully alleged herein.

103. As a direct and proximate result of the negligence of Defendants, Plaintiff Erica Chambers sustained damages and will continue to sustain damages as alleged herein above, including:

a. Physical and emotional injuries;

b. Past and future pain and suffering;

**WHEREFORE**, Plaintiff prays the Court that they have and recover:

1. Plaintiffs have and recover judgment against Defendants, jointly and severally, for compensatory damages in excess of Twenty-Five Thousand Dollars ($25,000.00);

2. Pre-judgment and post-judgment interest as provided by law;

3. The costs of this action;

4. Trial by jury of all issues of fact so triable;

5. Plaintiffs' attorneys' fees; and

6. Such other and further relief as the Court may deem just and proper.

This the 24th day of March, 2021.

**LAW OFFICES OF JAMES SCOTT FARRIN**
*Attorneys for Plaintiff*

By: Coleman Cowan
Coleman M. Cowan (State Bar No. 21997)
Kaitlyn E. Fudge (State Bar No. 54829)
280 S. Mangum Street, Suite 400
Durham, North Carolina 27701
Telephone: (919) 688-4991
Facsimile: (919) 688-4468
ccowan@farrin.com

HARFORD MUTUAL
COMMITTED TO MUTUAL SUCCESS

**Policy #:** 9180396

**Issued to:** NC CHAMPIONS CONSTRUCTION INC

**Agent:** ANGIE'S INSURANCE, LLC

**Phone #:** 9844391567

Thank you for placing your insurance coverage with Harford Mutual. Your Business is very important to us. We are committed to providing you with quality service and a quality product. Please examine the attached policy carefully to make sure that we are providing the coverages you have requested. If you have any questions regarding policy coverage or need to make any changes, please contact your underwriter listed below. If you have any billing questions or changes, please contact Accounting Department Customer Service at the phone number listed below.

| | |
|---|---|
| Type of Policy: | Commercial Lines |
| Billing: | Direct Bill |
| Annual Premium: | |
| Commission: | |
| Billing Customer ID: | 315583 |
| Payment Plan: | F (4 payments) |
| Commercial Underwriter: | Veronica Bullard (410)838-4000 |
| Production Underwriter: | Cindy Presnell 336-681-5688 |
| Accounting Dept. Customer Service: | (866) 377-1896 |
| Policy Period: | 10/17/2018 to 10/17/2019 |

PLAINTIFF'S EXHIBIT
2

**AGENT COPY**

9122-BAS

# *State Premium Calculation*

**WCIP American Interstate Insurance Co. - 24759**
**2301 HWY 190 WEST**
**DERIDDER, LA 70634**

Insured

**NC Champions Construction Inc**
**650 Ganyard Farm Way**
**DURHAM, NC 27703**

**10/24/2018 02:38:39 PM**

Agent

**ANGIES INSURANCE LLC (A/R)**
**2402 S MIAMI BLVD STE 204**
**DURHAM, NC 27703**

Policy

**RAWCNC2743632018**

| Submission No. | Effective | |
|---|---|---|
| **0000956300** | **10/17/2018** | **- 10/17/2019** |
| ***North Carolina*** | **10/17/2018** | **- 10/17/2019** |

| | | Basis | Exposure | Rate |
|---|---|---|---|---|
| 5645 | Carpentry-Construction of Res. Dwelling up to 3 stories high | PAYROLL | | |
| Total Manual Premium | | | | |
| 9812 | 1000/1000/1000 E.L. Limits | | | |
| Total Subject Premium | | | | |
| Total Modified Premium | | | | |
| Total Standard Premium | | | | |
| 0900 | Expense Constant | | | |
| Subtotal | | | | |
| 9740 | Terrorism | | | |
| 9741 | Catastrophe (other than Certified Acts of Terrorism | | | |
| Estimated Annual Premium for NC | | | | |

ADOWDEN
WC 00 00 01 B (1/99)



# NOTICE



## IF YOU HAVE FINANCED PREMIUM

THIS IS TO ADVISE YOU THAT IF YOUR WORKERS' COMPENSATION POLICY IS FINANCED WITH A FINANCE COMPANY, AND YOUR POLICY IS CANCELLED BY THAT FINANCE COMPANY, WE WILL HONOR THIS REQUEST AND PROCESS CANCELLATION IMMEDIATELY, JUST AS IF YOU **HAD MADE THE REQUEST YOURSELF.**

YOUR FINANCE COMPANY DOES NOT HAVE THE AUTHORITY TO REINSTATE YOUR POLICY. THEY CAN ONLY REQUEST THAT WE REINSTATE YOUR POLICY.

WE WILL ONLY REINSTATE IF THE PREMIUM FINANCE COMPANY NOTIFIES US PRIOR TO THE EFFECTIVE DATE OF CANCELLATION. YOU MAY WANT TO HAVE YOUR AGENT NOTIFY THE PREMIUM FINANCE COMPANY OF THIS PROCEDURE TO AVOID PROBLEMS. **REINSTATEMENT IS AT THE DISCRETION OF THE WCIP American Interstate Insurance Co.**

IF YOU DO NOT RECEIVE A REINSTATEMENT NOTICE FROM

**WCIP American Interstate Insurance Co.**

YOUR POLICY HAS NOT BEEN REINSTATED.

## INSPECTION SERVICES

WCIP American Interstate Insurance Co. MAKES AVAILABLE TO YOU, OUR POLICYHOLDER, ACCIDENT PREVENTION SERVICES TO INCLUDE SURVEYS, RECOMMENDATIONS, TRAINING PROGRAMS, CONSULTATIONS AND ANALYSIS OF ACCIDENT CAUSES. THESE SERVICES ARE AVAILABLE AT NO ADDITIONAL CHARGE AND WILL BE PROVIDED UPON YOUR REQUEST.

WCIP American Interstate Insurance Co. ALSO WELCOMES COMMENTS FROM YOU TO DETERMINE YOUR NEED FOR SAFETY INFORMATION OR ASSISTANCE. PLEASE FORWARD YOUR REQUESTS OR COMMENTS TO:

**WCIP American Interstate Insurance Co.**

**ATTN: LOSS CONTROL DEPARTMENT**
**2301 Hwy. 190 West**
**DeRidder, LA 70634**

**OR CALL**

**WATS: (800) 256-9052**

**American Interstate Insurance Company • AMERISAFE, Inc. • Silver Oak Casualty**

(11/85)

# The Harford Mutual Insurance Companies

Bel Air, Maryland 21014-3544

**Company:** The Harford Mutual Insurance Company

**Policy Number:** 9180396 **Renewal of:** New

**COMMERCIAL LINES POLICY**

**Named Insured and Mailing Address**

NC CHAMPIONS CONSTRUCTION INC
650 GANYARD FARM WAY
UNIT 29
Durham, NC 27703-6272

**Agency Name and Address**

9122-BAS ANGIE'S INSURANCE, LLC
2402 S MIAMI BLVD., STE 204
DURHAM, NC 27703
9844391567

**Policy Period:** From 10/17/2018 to 10/17/2019 at 12:01 A.M. Standard Time at your mailing address shown above.

**In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

FORM OF BUSINESS: BUSINESS ORGANIZATION OTHER THAN PARTNERSHIP OR JOINT VENTURE
BUSINESS DESCRIPTION: SIDING INSTALLATION

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

---

| | PREMIUM |
|---|---|
| Commercial General Liability Coverage Part............................. | $ |
| Terrorism Risk Insurance Program Reauthorization Act of 2015 (Certified) | $ |
| Premium shown is payable annually...... | $ |

---

FORMS AND ENDORSEMENTS: See Form Schedule

---

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATION(S), COVERAGE PART COVERAGE FORMS AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF COMPLETES THIS POLICY.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002.

---

VBulla

(1) 1997/11/20-1.00
ISSUE DATE: 10/23/2018 #1

Countersigned:______________________________
(Authorized Representative) (Date)

**FILE COPY**

# The Harford Mutual Insurance Companies

Bel Air, Maryland 21014-3544

**Company:** The Harford Mutual Insurance Company

**Policy Number:** 9180396 **Renewal of:** New

**GENERAL LIABILITY COVERAGE**
PART DECLARATIONS

**Named Insured and Mailing Address**

NC CHAMPIONS CONSTRUCTION INC
650 GANYARD FARM WAY
UNIT 29
Durham, NC 27703-6272

**Agency Name and Address**

9122-BAS ANGIE'S INSURANCE, LLC
2402 S MIAMI BLVD., STE 204
DURHAM, NC 27703
9844391567

**Policy Period:** From 10/17/2018 to 10/17/2019 at 12:01 A.M. Standard Time at your mailing address shown above.

**In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

LIMITS OF INSURANCE

Each Occurrence...................... [redacted]
Damage to Premises Rented To You... (Any one fire)
Medical Expense.................. (Any one person)
Personal & Advertising Injury........ (Any one person or organization)
General Aggregate.................. .....................
Products/Completed Operations Aggregate.............................

ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY: See Liability Schedule

FORMS AND ENDORSEMENTS: See Form Schedule

PREMIUM: TOTAL ADVANCE PREMIUM:

LIABILITY SCHEDULE:

Classification:
98967 Siding Installation

Premium Basis: Payroll per $1,000

Location Information:
Various North Carolina Locations

Per Claim Deductible
PD:

| Coverage | Exposure | Rate | Premium |
|---|---|---|---|
| Premises/Operations | 44,800 | | |
| Products/Completed Operations | 44,800 | | |

(3) POLICY: 9180396 1997/11/20-1.00
ISSUE DATE: 10/23/2018 #1

**FILE COPY**

(11/85)

# The Harford Mutual Insurance Companies

Bel Air, Maryland 21014-3544

**Company:** The Harford Mutual Insurance Company

**Policy Number:** 9180396 **Renewal of:** New

**COMMERCIAL LINES POLICY**
ENDORSEMENT SUMMARY

**Named Insured and Mailing Address**

NC CHAMPIONS CONSTRUCTION INC
1006 BENNING ST
Durham, NC 27703

**Agency Name and Address**

9122-BAS ANGIE'S INSURANCE, LLC
2402 S MIAMI BLVD., STE 204
DURHAM, NC 27703
9844391567

**Policy Period:** From 10/17/2018 to 10/17/2019 at 12:01 A.M. Standard Time at your mailing address shown above.

**In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

FORM OF BUSINESS: BUSINESS ORGANIZATION OTHER THAN PARTNERSHIP OR JOINT VENTURE
BUSINESS DESCRIPTION: SIDING INSTALLATION This endorsement is effective 10/25/2018.

MAILING ADDRESS IS AMENDED TO READ AS SHOWN ABOVE

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | NEW ANNUAL PREMIUM | PREVIOUS ANNUAL PREMIUM |
|---|---|---|
| Commercial General Liability Coverage Part........ | | |
| Terrorism Risk Insurance Act of 2015.............. | | |
| Total............ | | |

FORMS AND ENDORSEMENTS: See Form Schedule

KZink

(1) 1997/11/20-1.00
ISSUE DATE: 10/25/2018 #2

Countersigned: ______________________________
(Authorized Representative) (Date)

FILE COPY

# NOTICE OF CANCELLATION, NONRENEWAL OR DECLINATION OF INSURANCE
**(North Carolina)**

| | | | |
|---|---|---|---|
| NAME AND ADDRESS OF INSURANCE COMPANY | The Harford Mutual Insurance Company<br>200 N. Main Street<br>Bel Air MD 21014<br>Tel: (410) 838-4000 | | KIND OF POLICY:<br>General Liability |
| | | | POLICY/APPLICATION/BINDER NO.: 9180396 |
| | | | EFFECTIVE DATE OF NOTICE:<br>01/07/2019 (DATE) 12:01 AM (HOUR-STANDARD TIME AT THE ADDRESS OF THE INSURED) |
| | | | DATE OF MAILING: 12/21/2018 |
| NAME AND ADDRESS OF INSURED | NC CHAMPIONS CONSTRUCTION INC<br>1006 BENNING ST<br>Durham NC 27703 | | NAME AND ADDRESS OF AGENT/BROKER:<br>Angie's Insurance, LLC (9122-BAS)<br>2402 S Miami Blvd., Ste 204<br>Durham NC 27703<br>Tel: 9844391567 |

**(Applicable item marked "X")**

**Cancellation**

☐ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.
See the **"Important Notices"** section for other information that may apply.

☒ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above for the **reason(s)** stated in the **"Important Notices"** section.
See the **"Important Notices"** section for other information that may apply.

**Premium Adjustment**

☐ Premium adjustment will be made in accordance with North Carolina law and the terms of the policy.
☐ Enclosed is $ ________________, being the amount of unearned premium for the unexpired term of the policy.
☐ A bill for the premium earned to the time of cancellation will be forwarded in due course.
☐ Other: ________________

**Nonrenewal**

☐ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed.
See the **"Important Notices"** section for other information that may apply.

☐ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed for the **reason(s)** stated in the **"Important Notices"** section.
See the **"Important Notices"** section for other information that may apply.

**Declination of Insurance**

☐ Your written application or written request for the kind of insurance mentioned above has been declined.
See the **"Important Notices"** section for other information that may apply.

**Important Notices**

☒ **Reason(s) for cancellation, nonrenewal or declination of insurance** (reason(s) stated only if above marked item indicates such):
Nonpayment of premium. You are hereby advised that the amount of premium due is $120.00 prior to 12:01 am on 01/07/2019 payable to Harford Mutual.

☐ **CONTINUOUS FINANCIAL RESPONSIBILITY (LIABILITY INSURANCE) REQUIRED — Nothing in the following advisory language affects or modifies the notice of cancellation or the notice of nonrenewal above. YOU ARE CAUTIONED THAT UNDER NORTH CAROLINA LAW YOU MUST MAINTAIN FINANCIAL RESPONSIBILITY (LIABILITY INSURANCE) CONTINUOUSLY THROUGHOUT YOUR MOTOR VEHICLE'S REGISTRATION PERIOD. OPERATION OF A MOTOR VEHICLE WITHOUT MAINTAINING SUCH FINANCIAL RESPONSIBILITY IS A CLASS 3 MISDEMEANOR, AND THE PENALTIES FOR SUCH OPERATION INCLUDE LOSS OF YOUR VEHICLE'S LICENSE PLATE, IMPRISONMENT OF UP TO 20 DAYS, A FINE UP TO $200 AND A PENALTY UP TO $150.**
If your liability coverage is being cancelled, you SHOULD contact your present agent or any other licensed agent to secure replacement insurance in order to maintain continuous financial responsibility.

☐ **Additional Information Regarding the Reason(s) for Cancellation, Nonrenewal or Declination of Insurance:**
You have the right to know the specific items of information that support the reasons given for this decision and the identity of the source of that information. You also have the right to see and obtain copies of documents relating to this decision.
If you ask us to correct, amend, or delete any information about you in our files and if we refuse to do so, you have the right to give us a concise statement of what you believe is the correct information. We will put your statement in our file so that anyone reviewing your file will see it.
If you would like additional information concerning this action, state law requires that you submit a written request within ninety (90) business days of the date this notice was mailed to you. Please send your request to:

________________________________
(Name and Address of the person or department to contact for additional information.)

GU 400e (04/14) COMPANY'S COPY *** MORE INFORMATION ON REVERSE SIDE ***

**UNITED STATES POSTAL SERVICE®**

# Certificate Of Mailing

To pay fee, affix stamps or meter postage here

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing. This form may be used for domestic and international mail

From:
The Harford Mutual Insurance Company
200 N. Main Street

Bel Air MD 21014

Postmark Here

To:
NC CHAMPIONS CONSTRUCTION INC
1006 BENNING ST

Durham NC 27703

PS Form **3817**, April 2007 PSN 7530-02-000-9065 - Facsimile

**(If notice of cancellation, nonrenewal or declination is mailed to the insured, complete the following.)**

**CERTIFICATION OF MAILING**

I hereby certify that I personally mailed in the U. S. Post Office at the place and time stamped hereon, a notice of cancellation, nonrenewal or declination to the Insured, an exact copy attached hereto and at said time received from the U. S. Postal Service the receipt made a part hereof or attached hereto.

Applying to Policy # 9180396

Signed on this Date of Mailing 12/21/2018

Martha A Slusher

Signature

**US Postal Form 3817 Facsimile** (04/07)

**COMPANY'S COPY**

(11/85)

# The Harford Mutual Insurance Companies

Bel Air, Maryland 21014-3544

**Company:** The Harford Mutual Insurance Company

**Policy Number:** 9180396 **Renewal of:** New

**COMMERCIAL LINES POLICY**
ENDORSEMENT SUMMARY

**Named Insured and Mailing Address**

NC CHAMPIONS CONSTRUCTION INC
1006 BENNING ST
Durham, NC 27703

**Agency Name and Address**

9122-BAS ANGIE'S INSURANCE, LLC
2402 S MIAMI BLVD., STE 204
DURHAM, NC 27703
9844391567

**Policy Period:** From 10/17/2018 to 10/17/2019 at 12:01 A.M. Standard Time at your mailing address shown above.
**In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

FORM OF BUSINESS: BUSINESS ORGANIZATION OTHER THAN PARTNERSHIP OR JOINT VENTURE
BUSINESS DESCRIPTION: SIDING INSTALLATION This endorsement is effective 02/11/2019.

POLICY IS AMENDED TO ADD HIRED/NON OWNED TO THE POLICY PER FORM GLHM02.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | NEW ANNUAL PREMIUM | PREVIOUS ANNUAL PREMIUM |
|---|---|---|
| Commercial General Liability Coverage Part........ | | |
| Terrorism Risk Insurance Act of 2015............... | | |
| Total............ | | |

FORMS AND ENDORSEMENTS: See Form Schedule

TOTAL ADDITIONAL FOR THIS ENDORSEMENT:

THatfi

(1) 1997/11/20-1.00
ISSUE DATE: 02/12/2019 #3

Countersigned: ______________________________
(Authorized Representative) (Date)

**FILE COPY**

(11/85)

# The Harford Mutual Insurance Companies

Bel Air, Maryland 21014-3544

**Company:** The Harford Mutual Insurance Company

**Policy Number:** 9180396 **Renewal of:** New

**COMMERCIAL LINES POLICY**
ENDORSEMENT SUMMARY

**Named Insured and Mailing Address**
NC CHAMPIONS CONSTRUCTION INC
1006 BENNING ST
Durham, NC 27703

**Agency Name and Address**
9122-BAS ANGIE'S INSURANCE, LLC
2402 S MIAMI BLVD., STE 204
DURHAM, NC 27703
9844391567

**Policy Period:** From 10/17/2018 to 10/17/2019 at 12:01 A.M. Standard Time at your mailing address shown above.
**In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

FORM OF BUSINESS: BUSINESS ORGANIZATION OTHER THAN PARTNERSHIP OR JOINT VENTURE
BUSINESS DESCRIPTION: SIDING INSTALLATION This endorsement is effective 02/11/2019.

POLICY IS AMENDED TO ADD HIRED/NON OWNED TO THE POLICY PER FORM GLHM02.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | NEW ANNUAL PREMIUM | PREVIOUS ANNUAL PREMIUM |
|---|---|---|
| Commercial General Liability Coverage Part........ | | |
| Terrorism Risk Insurance Act of 2015............. | | |
| Total............ | | |

FORMS AND ENDORSEMENTS: See Form Schedule

TOTAL ADDITIONAL FOR THIS ENDORSEMENT:

THatfi

(1) 1997/11/20-1.00
ISSUE DATE: 02/12/2019 #3

Countersigned: ______________________________
(Authorized Representative) (Date)

**FILE COPY**

# NOTICE OF CANCELLATION, NONRENEWAL OR DECLINATION OF INSURANCE
**(North Carolina)**

| | | | |
|---|---|---|---|
| NAME AND ADDRESS OF INSURANCE COMPANY | The Harford Mutual Insurance Company<br>200 N. Main Street<br>Bel Air MD 21014<br>Tel: (410) 838-4000 | KIND OF POLICY: General Liability | |
| | | POLICY/APPLICATION/BINDER NO.: 9180396 | |
| | | EFFECTIVE DATE OF NOTICE: 03/10/2019 (DATE) | 12:01 AM (HOUR-STANDARD TIME AT THE ADDRESS OF THE INSURED) |
| | | DATE OF MAILING: 02/21/2019 | |
| NAME AND ADDRESS OF INSURED | NC CHAMPIONS CONSTRUCTION INC<br>1006 BENNING ST<br>Durham NC 27703 | NAME AND ADDRESS OF AGENT/BROKER:<br>Angie's Insurance, LLC (9122-BAS)<br>2402 S Miami Blvd., Ste 204<br>Durham NC 27703<br>Tel: 9844391567 | |

**(Applicable item marked "X")**

**Cancellation**

☐ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.
See the **"Important Notices"** section for other information that may apply.

☒ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above for the **reason(s)** stated in the **"Important Notices"** section.
See the **"Important Notices"** section for other information that may apply.

**Premium Adjustment**

☐ Premium adjustment will be made in accordance with North Carolina law and the terms of the policy.
☐ Enclosed is $ ____________, being the amount of unearned premium for the unexpired term of the policy.
☐ A bill for the premium earned to the time of cancellation will be forwarded in due course.
☐ Other: ____________

**Nonrenewal**

☐ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed.
See the **"Important Notices"** section for other information that may apply.

☐ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed for the **reason(s)** stated in the **"Important Notices"** section.
See the **"Important Notices"** section for other information that may apply.

**Declination of Insurance**

☐ Your written application or written request for the kind of insurance mentioned above has been declined.
See the **"Important Notices"** section for other information that may apply.

**Important Notices**

☒ **Reason(s) for cancellation, nonrenewal or declination of insurance** (reason(s) stated only if above marked item indicates such):
Nonpayment of premium. You are hereby advised that the amount of premium due is $257.50
prior to 12:01 am on 03/10/2019 payable to Harford Mutual.

☐ **CONTINUOUS FINANCIAL RESPONSIBILITY (LIABILITY INSURANCE) REQUIRED — Nothing in the following advisory language affects or modifies the notice of cancellation or the notice of nonrenewal above. YOU ARE CAUTIONED THAT UNDER NORTH CAROLINA LAW YOU MUST MAINTAIN FINANCIAL RESPONSIBILITY (LIABILITY INSURANCE) CONTINUOUSLY THROUGHOUT YOUR MOTOR VEHICLE'S REGISTRATION PERIOD. OPERATION OF A MOTOR VEHICLE WITHOUT MAINTAINING SUCH FINANCIAL RESPONSIBILITY IS A CLASS 3 MISDEMEANOR, AND THE PENALTIES FOR SUCH OPERATION INCLUDE LOSS OF YOUR VEHICLE'S LICENSE PLATE, IMPRISONMENT OF UP TO 20 DAYS, A FINE UP TO $200 AND A PENALTY UP TO $150.**
If your liability coverage is being cancelled, you SHOULD contact your present agent or any other licensed agent to secure replacement insurance in order to maintain continuous financial responsibility.

☐ **Additional Information Regarding the Reason(s) for Cancellation, Nonrenewal or Declination of Insurance:**
You have the right to know the specific items of information that support the reasons given for this decision and the identity of the source of that information. You also have the right to see and obtain copies of documents relating to this decision.
If you ask us to correct, amend, or delete any information about you in our files and if we refuse to do so, you have the right to give us a concise statement of what you believe is the correct information. We will put your statement in our file so that anyone reviewing your file will see it.
If you would like additional information concerning this action, state law requires that you submit a written request within ninety (90) business days of the date this notice was mailed to you. Please send your request to:

____________________________________________
(Name and Address of the person or department to contact for additional information.)

UNITED STATES POSTAL SERVICE®

# Certificate Of Mailing

To pay fee, affix stamps or meter postage here.

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing. This form may be used for domestic and international mail.

From:
The Harford Mutual Insurance Company
200 N. Main Street

Bel Air MD 21014

Postmark Here

To:
NC CHAMPIONS CONSTRUCTION INC
1006 BENNING ST

Durham NC 27703

PS Form **3817**, April 2007 PSN 7530-02-000-9065 - Facsimile

**(If notice of cancellation, nonrenewal or declination is mailed to the Insured, complete the following.)**

**CERTIFICATION OF MAILING**

I hereby certify that I personally mailed in the U. S. Post Office at the place and time stamped hereon, a notice of cancellation, nonrenewal or declination to the Insured, an exact copy attached hereto and at said time received from the U. S. Postal Service the receipt made a part hereof or attached hereto.

Applying to Policy # 9180396

Signed on this Date of Mailing 02/21/2019

Martha A Slusher

Signature

**US Postal Form 3817 Facsimile** (04/07) **COMPANY'S COPY**

IMPORTANT NOTICES TO POLICYHOLDERS

| | | |
|---|---|---|
| ILMS003 | (0115) | POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE |
| ILMS016 | (1015) | CUSTOMER PRIVACY POLICY |
| ILMS018 | (0718) | IMPORTANT POLICYHOLDER INFORMATION CONCERNING BILLING AND POLICY FEES |
| ILMS11 | (0604) | ADVISORY NOTICE TO POLICYHOLDERS - OFAC |
| ILMS13-2 | (0513) | UNDERSTANDING THE AUDIT PROCESS COULD SAVE YOU MONEY |
| ILN001 | (0903) | FRAUD STATEMENT |

COMMON POLICY FORM SCHEDULE

FORMS AND ENDORSEMENTS APPLYING TO AND MADE A PART OF THIS POLICY AT TIME OF ISSUE:

| | | |
|---|---|---|
| IL0017 | (1198) | COMMON POLICY CONDITIONS |
| IL0269 | (0908) | NORTH CAROLINA CHANGES - CANCELLATION AND NONRENEWAL |

(2) POLICY: 9180396 1997/11/20-1.00
ISSUE DATE: 03/06/2019 #4

IMPORTANT NOTICES TO POLICYHOLDERS

CGMS004 (1017) AUDIT NONCOMPLIANCE FACTOR ADVISORY NOTICE
ILMS93-1(0908) LEAD LIABILITY EXCLUSION

GENERAL LIABILITY FORM SCHEDULE

FORMS AND ENDORSEMENTS APPLYING TO AND MADE A PART OF THIS POLICY AT TIME OF ISSUE:

CG0001 (0413) COMMERCIAL GENERAL LIABILITY COVERAGE FORM
CG0300 (0196) DEDUCTIBLE LIABILITY INSURANCE
CG2106 (0514) EXCLUSION-ACCESS/DISCLOSURE W/LTD BODILY INJURY EXCEPTION
CG2109 (0615) EXCLUSION - UNMANNED AIRCRAFT
CG2132 (0509) COMMUNICABLE DISEASE EXCLUSION
CG2147 (1207) EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG2167 (1204) FUNGI OR BACTERIA EXCLUSION
CG2171 (0115) EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE US; CAP
CG2176 (0115) EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM
CG2186 (1204) EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS
CG2196 (0305) SILICA OR SILICA-RELATED DUST EXCLUSION
CG2426 (0413) AMENDMENT OF INSURED CONTRACT DEFINITION
CGHG06 (1116) EXCLUSION - LEAD CONTAMINATION
CGHG21 (0105) ASBESTOS EXCLUSION ENDORSEMENT
CGHG29 (0413) LIABILITY ADDITIONAL COVERAGE ENDORSEMENT
CGHG31 (0413) TOBACCO HEALTH HAZARD EXCLUSION
CGHG42 (1017) AUDIT NONCOMPLIANCE FACTOR ENDORSEMENT
IL0021 (0908) NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)
CG2010 (0413) ADD'L INSURED-OWNERS, LESSEES OR CONTRACTORS-SCHEDULED..........
Name of Person or Org: NVR INC
Location of Operations: RALEIGH NC

CG2037 (0413) ADD INS-OWNERS, LESSEES OR CONTRACTORS-COMPLETED OPERATIONS....
Name of Person or Org.: NVR INC
Loc Completed Operations: RALEIGH NC
Desc Completed Operations: SIDING INSTALLATION
Contractor Gross Receipts: $2,000

CG2101 (1185) EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS
Description of Operations: SIDING INSTALLATION

CG2234 (0413) EXCLUSION -CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS
CG2243 (0413) EXCL.-ENGINEERS, ARCHITECTS OR SURVEYORS PROF LIABILITY
CG2279 (0413) EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY
CG2404 (0509) WAIVER/TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
Name Of Person Or Org.: NVR INC

GLHM02 (0689) HIRED AUTO AND NON-OWNED AUTO LIABILITY.......................
Coverage: Hired Auto and Non-Ownership Liability

COVERAGE EXTENSIONS AND/OR MISCELLANEOUS CHARGES

MEDICAL PAYMENTS ADDITIONAL PREMIUM...........................................

## REINSTATEMENT NOTICE

| | | | | |
|---|---|---|---|---|
| NAME AND ADDRESS OF INSURANCE COMPANY | The Harford Mutual Insurance Company<br>200 N. Main Street<br>Bel Air<br>Tel: (410) 838-4000 | MD | 21014 | KIND OF POLICY:<br>General Liability |
| | | | | POLICY/APPLICATION/BINDER NO.: 9180396 |
| | | | | DATE OF MAILING: 03/22/2019 |
| NAME AND ADDRESS OF INSURED | NC CHAMPIONS CONSTRUCTION INC<br>1006 BENNING ST<br>Durham | NC | 27703 | NAME AND ADDRESS OF AGENT/BROKER: Tel: 9844391567<br>Angie's Insurance, LLC (9122-BAS)<br>2402 S Miami Blvd., Ste 204<br>Durham NC 27703 |

The coverage provided by the policy number shown above was previously cancelled or nonrenewed effective 3/10/2019 12:01:00 AM. The premium had not been paid in accordance with the policy terms.

We have received the premium payment. The policy is being reinstated effective 03/10/2019 unless payment made by check is not honored by the bank. Then, the cancellation notice already mailed to you continues to apply.

If you have received other notices of cancellation, this reinstatement does not affect those notices.

Your insurance protection is valuable to you. Please make all future payments on time to prevent a lapse in this important coverage.

AUTHORIZED REPRESENTATIVE

NAME AND ADDRESS OF ADDITIONAL INTEREST

## ADVISORY NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.**

**THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.**

**PLEASE READ THIS NOTICE CAREFULLY**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 **Copyright, Insurance Services Office, Inc. 2003** 

HARFORD MUTUAL

COMMITTED TO MUTUAL SUCCESS

# Customer Privacy Policy

Since 1842, Harford Mutual Insurance Company has been committed to the mutual success of our policyholders, agencies and local community. It is because of this commitment that we are dedicated to protecting the confidentiality of our customers' Nonpublic Personal Information (NPI). We take this opportunity to share our procedures and policies designed to safeguard your information, which may be obtained in the course of our business relationship with you.

This notice serves to explain: what type of information we collect; how we collect it; what we do with it after we collect it; how we safeguard your privacy; and how you may obtain information, if any, about your NPI. We will inform you concerning these policies in this notice and every year that you remain our customer.

## Our Privacy Policy

- We do not sell your NPI.
- We do not share your NPI with nonaffiliated third parties other than as necessary to service your policy or claim.
- We do not share your health or financial information, except as authorized by law.
- We use your NPI only to service your policies, claims and to meet your needs as they have been described to us.
- We will require that persons or organizations providing goods or services to you on our behalf protect the confidentiality of your NPI.
- We protect your NPI regardless of whether you are a current or a former customer.
- We maintain physical, electronic and procedural safeguards to protect your NPI from disclosure.

## How We Collect Information

We collect and retain information about you to provide you with the coverage, product, or service you request, or to service your account as permitted by law, and as needed to conduct business. We collect your NPI from the following sources:

- Your application for insurance or similar forms;
- Consumer reporting agencies, motor vehicle records, credit reports, claims history, loss information reports, court records or other public records; property inspections to verify value and condition for property insurance; or
- Your insurance agent.

## Information We Collect About You

Harford Mutual gets most of its information from your application for insurance or from your insurance agent. This includes, for example, your name; address; social security number; financial account or credit card information; vehicle type; credit based insurance score; a report about your coverage and claims history with other companies and motor vehicle records, to name a few.

For property and liability insurance, we may send someone to inspect your property and verify the value and condition of your property. A photo of any property to be insured may be taken and retained. We may also obtain reports concerning the square footage of your property from companies that collect such data.

For workers' compensation insurance, we may send someone to perform an audit or accounting of your business records to ensure that you are getting the appropriate premium charge.

## What We Do With the Information Collected

Harford Mutual uses your information only as permitted by law. We may use your information to: service products you have purchased; underwrite your policy; process claims; protect against fraud; and comply with legal requirements.

Information collected is maintained in either our policy records or in your agent's files. We may review it to evaluate requests for insurance coverage or to determine your insurance rates. Your information may also be used to decide whether to issue a renewal policy or settle a claim.

If coverage is declined, or if your rates increase because of information we received from a consumer report, we will tell you as required by the Fair Credit Reporting Act.



200 NORTH MAIN STREET, BEL AIR, MARYLAND 21014-3544 ▪ T (410) 838 4000 F (410) 838 8675 ▪ HARFORDMUTUAL.COM

# IMPORTANT POLICYHOLDER INFORMATION CONCERNING BILLING AND POLICY FEES

The purpose of this Policyholder Notice is to provide you with important information about our billing practices that may affect you and fees that may apply under certain circumstances.

**Billing Options:** Depending on the type of billing your agent has selected you may be billed separately by either the agent or by the company. All policies issued by one of the Harford Mutual Insurance Companies are eligible to be placed on an installment plan.

**Company Billing:** If you are being billed by the company, you will be assigned a six digit client number. This billing customer number should be used for each policy on the direct bill plan and on all correspondence regarding your bill. Depending on the payment plan chosen, you may receive a bill once a month on the same day each month during the payment period with one statement for all policies that are linked by billing customer number under the company Direct Bill plan. Payment plans are available if you elect to pay on installments.

**Payment Plans:** If you elect to pay your premium in full there are no installment charges applied to your policy. If you elect to pay your premiums in installments using one of our payment plans, a billing installment fee of **$5.00** will apply at a policy level to all installments except the first installment. It is recommended that all policies for the same insured have concurrent policy dates and utilize the same payment plan.

**Late Fee:** If we do not receive the minimum amount of payment due on or before the due date, as indicated on your billing notice, a non-payment of premium cancellation notice will be issued with a future effective date. A **$10.00** late fee will apply at a policy level whenever a non-payment of premium notice is processed.

**Reinstatement Fee:** If we reinstate coverage after the policy has been cancelled we will add a **$25.00** reinstatement fee.

**Dishonored Check Fee:** If your payment is made by check and your financial institution refuses to honor the premium payment, due to insufficient funds in your account or for some other reason, a **$25.00** non-sufficient fund check fee will apply.

**Endorsements:** All endorsements, both additional and return premiums, will be spread over the remaining installment payment periods based on the effective date of the endorsement. If an endorsement is processed with a retroactive effective date, the impact on the next billing statement will be greater than the impact on the remaining installments.

Please review this information and contact your agent or the company if you have questions or need additional information about the billing and policy fees.

**Thank you for choosing one of The Harford Mutual Insurance Companies for your insurance coverage.**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 

(g) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

(h) Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

(i) A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

(j) You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

(i) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(ii) 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**d.** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**B.** The following provisions are added and supersede any other provisions to the contrary:

**1. Nonrenewal**

**a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

**(1)** Expiration of the policy if this policy has been written for one year or less; or

**(2)** Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

**b.** We need not mail or deliver the notice of nonrenewal if you have:

**(1)** Insured property covered under this policy, under any other insurance policy;

**(2)** Accepted replacement coverage; or

**(3)** Requested or agreed to nonrenewal of this policy.

**c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** The written notice of cancellation or nonrenewal will:

**a.** Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

**b.** State the reason or reasons for cancellation or nonrenewal.


© ISO Properties, Inc., 2007

# ADVISORY NOTICE TO POLICYHOLDERS

## LEAD LIABILITY EXCLUSION

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

**PLEASE READ YOUR POLICY, AND THE ENDORSEMENTS ATTACHED TO YOUR POLICY, CAREFULLY.**

Your policy excludes coverage for claims resulting or arising from lead contamination.

You should be aware that the ingestion of lead paint by young children can potentially result in serious brain damage. We suggest you determine if lead hazards exist on your premises and, if so, promptly see that they are removed.

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".


© Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;


© Insurance Services Office, Inc., 2012

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".


© Insurance Services Office, Inc., 2012

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.


© Insurance Services Office, Inc., 2012

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C;**

b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B.**


© Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;


© Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.


© Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.


© Insurance Services Office, Inc., 2012

2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.


Copyright, Insurance Services Office, Inc., 1994

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or


© Insurance Services Office, Inc., 2014

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.


© Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.


© ISO Properties, Inc., 2003

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

(2) Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.


© Insurance Services Office, Inc., 2015

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.


© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

- **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
- **b.** A sidetrack agreement;
- **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
- **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
- **e.** An elevator maintenance agreement;
- **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

- **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;
- **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
  - **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
  - **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
- **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.


© Insurance Services Office, Inc., 2012

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A Bodily Injury And Property Damage Liability**

**2. Exclusions**

This insurance does not apply to:

**Asbestos or Asbestos Related Products**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "asbestos", in any manner or form, or in combination with any other factors, substances or events.

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "asbestos" or products containing "asbestos"

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for; monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, manufacturing, sale, storage, transportation, control, dispersal, release, leakage, removal or disposing of, or in any way responding to or assessing the effects of, "asbestos" or products containing "asbestos", by any insured or by any other person or entity.

**d.** Any other claim for damages, demands, costs, expenses or reimbursement of costs or expenses relating to or arising from "asbestos".

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B-Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos or Asbestos Related Products**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "asbestos", in any manner or form, or in combination with any other factors, substances or events.

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for; monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, manufacturing, sale, storage, transportation, control, dispersal, release, leakage, removal or disposing of, or in any way responding to or assessing the effects of, "asbestos" or products containing "asbestos", by any insured or by any other person or entity.

**c.** Any other claim for damages, demands, costs, expenses or reimbursement of costs or expenses relating to or arising from "asbestos".

**C.** The following definition is added to the Definitions Section:

**"Asbestos"** For the purpose of this exclusion, "asbestos" means any type or form of asbestos, including but not limited to asbestos products or goods, asbestos fibers, asbestos materials, and any dusts, gases, by-products, vapors, or odors that are released or produced by asbestos or asbestos products, goods, fibers or material.


Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright, ISO Properties, Inc., 2004

**D.** For the purpose of this endorsement, SECTION V – DEFINITIONS Paragraph **9.a.** of "Insured contract" is amended to read as follows:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or "explosion" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**E.** For the purpose of this endorsement, SECTION V – DEFINITIONS is amended to add the following definition:

"Explosion" means a sudden release of expanding pressure accompanied by a noise, an eruption of material and the scattering of debris to locations further than would have resulted by gravity alone.

"Explosion" does not include any of the following:

**1.** Artificially generated electrical current including electrical arcing that disturbs electrical devices, appliances or wires;

**2.** Rupture or bursting of water pipes;

**3.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control; or

**4.** Rupture or bursting caused by centrifugal force.

**LIMITED EXCEPTION FOR A SHORT-TERM POLLUTION EVENT**

SECTION I – COVERAGE A, 2. Exclusions, paragraph **f.** POLLUTION Items **(1)(a)** and **(1)(d)** are amended to include:

**(iv)** "Bodily Injury" or "property damage" arising out of a "short-term pollution event" provided you notify us of the "short-term pollution event" as soon as practicable, but no more than fourteen (14) days after its ending. However, failure to give notice within the time prescribed shall not invalidate any claim made by the insured or by any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

For the purpose of this endorsement, SECTION V DEFINITIONS is amended to add the following definition:

"Short-term pollution event" means a discharge, dispersal, release or escape of "pollutants" which:

**a.** Begins during the policy period;

**b.** Begins at an identified time and place;

**c.** Ends, in its entirety, at an identified time within forty-eight (48) hours of the beginning of the discharge, dispersal, release or escape of the "pollutants";

**d.** Is not a repeat or resumption of a previous discharge, dispersal, release or escape of the same pollutant from essentially the same source within twelve (12) months of a previous discharge, dispersal, release or escape;

**e.** Does not originate from an "underground storage tank"; and

**f.** Is not heat, smoke or fumes from a "hostile fire".

To be a "short-term pollution event", the discharge, dispersal, release or escape of "pollutants" need not be continuous. However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same "pollutants" from essentially the same source, considered together, must satisfy Provisions **a.** through **f.** of this definition to be considered a "short-term pollution event".

"Underground storage tank" means any storage tank, including any attached pumps, valves or piping, buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground or water.

The most we will pay is $25,000 for the sum of all such "bodily Injury" or "property damage" arising out of a "short-term pollution event" occurring during each separate 12 month period of this policy.

**NON-OWNED WATERCRAFT**

SECTION I – COVERAGE A, 2. Exclusions, paragraph **g.(2)** is amended to read as follows:

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**AGGREGATE LIMITS OF INSURANCE (PER LOCATION)**

SECTION III - LIMITS OF INSURANCE is amended to add the following:

The General Aggregate Limit applies separately to each "location" owned by or rented to you or temporarily occupied by you with the permission of the owner.

For the purpose of this endorsement, SECTION V DEFINITIONS is amended to add the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOBACCO HEALTH HAZARD EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**A.** Paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** are amended to add the following:

This insurance does not apply to any liability or damages, including expenses for investigation of defense, arising out of or allegedly arising out of:

**1.** "Health hazards" from the use of "tobacco products";

**2.** "Health hazards" caused by or contributed to by second-hand smoke from "tobacco products";

**3.** The furnishing of "tobacco products" to a person under the legal smoking age;

**4.** The manufacture, sale, handling, or distribution of "tobacco products";

**5.** Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of "tobacco products"; or

**6.** Any act or failure to act in connection with "tobacco products", including without limitation

**a.** the providing of or failure to provide warnings or instructions;

**b.** the promotion of the use or consumption of "tobacco products";

**c.** any warranties or representations made at any time with respect to the fitness, quality, durability or performance of "tobacco products".

**B.** For the purposes of this endorsement, **SECTION V – DEFINITIONS** is amended to add the following:

**1.** "Health hazards" include, but are not limited to, the actual or alleged emergence, contraction, aggravation or exacerbation or fear of the emergence, contraction, aggravation or exacerbation of any form of cancer, cancerous or precancerous condition, arteriosclerosis, heart disease, emphysema, lung disease or any other injury, disease, malady or impairment of the health of the human body arising out of, in whole or in part, the:

**a.** Ingestion, consumption, inhalation or use of; or

**b.** Exposure to the ingestion, consumption, inhalation or use of;

any "tobacco product".

**2.** "Tobacco product" includes, but is not limited to, tobacco (including raw and cured tobacco), cigars and cigar wrappers, pipes and pipe tobacco, cigarette filters, snuff, chewing tobacco, smokeless tobacco products, tobacco substitutes, cigarettes and cigarette paper, gaseous or solid residues or byproducts of tobacco use or consumption, smoke from any of the above, and any chemical, mineral, or other product sprayed on, applied to or found within or used in conjunction with, any of the above.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".


© ISO Properties, Inc., 2007

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: COMMERCIAL GENERAL LIABILITY

CG 20 37 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| | |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

**2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **1.** or **2.**

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I** – **Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.
2. Subject to Paragraph **3.** below, professional services include:
   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.
3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.


© Insurance Services Office, Inc., 2012

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Non-Ownership Liability | $ |
| Hired Auto Liability | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## HIRED AUTO LIABILITY

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.

With respect to the insurance provided by this endorsement:

1. The exclusions, under COVERAGE A (Section I), other than exclusions a, b, d, f and i and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

   a. "Bodily injury:"

      (1) To an employee of the insured arising out of and in the course of employment by the insured; or

      (2) To the spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

      **This exclusion applies:**

      (1) Whether the insured may be liable as an employer or in any other capacity; and

      (2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

      **This exclusion does not apply to:**

      (1) Liability assumed by the insured under an "insured contract;" or

      (2) "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

   b. "Property damage" to:

      (1) Property owned or being transported by, or rented or loaned to the insured; or

      (2) Property in the care, custody or control of the insured.

2. WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

   a. You;

   b. Any other person using a "hired auto" with your permission;

   c. With respect to a "non-owned auto," any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business.

   d. Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under a., b., or c. above.

**None of the following is an insured:**

   a. Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

   b. Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;

   c. Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;

   d. The owner or lessee (of whom you are a sublessee) or a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee;

   e. Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## NON-OWNED AUTO LIABILITY

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

The following additional definitions apply:

- "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos."
- "Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire, or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.
- "Non-owned auto" means any "auto" you do not own, lease, hire, or borrow which are used in connection with your business. However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

## LIMITS OF INSURANCE

Limits of Insurance (Section III) is replaced by the following:

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The Each Occurrence Limit is the most we will pay for the sum of damages under COVERAGE A because of all "bodily injury" and "property damage" arising out of any one "occurrence."

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

The Commercial General Liability Form also includes the following exclusionary language:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated.

**SECTION V – DEFINITIONS**

**3.** "Bodily injury" **as amended by CG HG 29 04 13** means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Property damage" means:

DEC-CU-99(1)

# The Harford Mutual Insurance Companies

Bel Air, Maryland 21014-3544

**Company:** The Harford Mutual Insurance Company

**Policy Number:** 7981019 **Renewal of:** New

## COMMERCIAL EXCESS UMBRELLA LIABILITY

DECLARATIONS

**Named Insured and Mailing Address**

ITEM 1 & 2
BIG BOSS CONSTRUCTION INC
6304 WESTGATE RD
STE A
Raleigh, NC 27617

**Agency Name and Address**

9122-BAS ANGIE'S INSURANCE, LLC
2402 S MIAMI BLVD., STE 204
DURHAM, NC 27703
9844391567

---

ITEM 3
Policy Period From: 08/26/2018 to 08/26/2019 at 12:01 A.M. Standard Time at your mailing address shown above. In return for the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy

---

ITEM 4
Retroactive Date
(Applicable only to claims made coverage)

---

ITEM 5
Limit of Insurance:
Policy Aggregate Limit: $ 2,000,000
Self Insured Retention: $ 10,000
(each occurrence or offense not covered by underlying insurance)

---

ITEM 6
Schedule of Underlying Insurance: SEE ATTACHED SCHEDULE OF UNDERLYING INSURANCE

---

ITEM 7
Form of Business: Organization other than Partnership or Joint Venture
Business Description: SIDING CONTRACTOR

---

ITEM 8
PREMIUM: $1,000 Terrorism: $0 Minimum Premium: $200 Total: $1,000

---

ITEM 9
Forms and Endorsements attached to this policy: SEE FORM SCHEDULE ATTACHED

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc. 1983, 1984

---

DBrown

PLAINTIFF'S EXHIBIT 4

(1) 2018/01/01-1.00
ISSUE DATE: 08/17/2018 #1

(Authorized Representative) (Date)

FILE COPY

## COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY

PLEASE READ THIS POLICY CAREFULLY

TO DETERMINE RIGHTS, DUTIES COVERAGE AND COVERAGE RESTRICTIONS.

The words you and your in this policy refer to the Named Insured shown in the Declarations. The words we, us and our refer to The Harford Mutual Insurance Company.

The word Insured means any person or organization qualifying as such under -- SECTION III --- WHO IS AN INSURED, beginning on page 8.

All highlighted words and phrases have special meaning. Refer to SECTION VII --- DEFINITIONS, beginning on page 16.

**SECTION I --- INSURING AGREEMENTS**

In consideration of the payment of premium and in reliance upon statements you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in Item 5 of the Declarations Page, and all the exclusions, terms and conditions of this policy, we agree with you as follows.

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

We will pay on behalf of the Insured for **Ultimate Net Loss** in excess of the **Retained Limit** because of **Bodily Injury** or **Property Damage** to which this insurance applies. No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under SECTION II --- DEFENSE AND SUPPLEMENTARY PAYMENTS --- COVERAGES A and B.

a. Claims-Made Insurance

With regard to **Bodily Injury** or **Property Damage**:

(1) To which **underlying insurance** written on a claims-made basis as shown in Item 6 of the Declarations Page of this policy applies, or would apply but for exhaustion of its limits of liability; or

(2) Covered by this policy but not covered by **Underlying Insurance**,

This insurance applies only if a **claim** for damages is first made against any Insured during the policy period of this policy or in any extended reporting period. However, this insurance does not apply to any injury or damage which occurred before the **Retroactive Date** of this policy shown in Item 4 of the Declarations Page or which occurred after the Policy Period of this policy shown in Item 3 of the Declarations Page.

It is agreed that:

(1) A **claim** by a person or organization seeking damages will be deemed to have been made when notice of such **claim** is received and recorded by an Insured or by us, whichever comes first.

(2) All **claims** for damages because of **bodily injury** to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the **bodily injury** will be deemed to have been made at the time the first of those **claims** is made against any Insured.

(3) All **claims** for damages because of **property damage** causing loss to the same person or organization as a result of an **occurrence** will be deemed to have been made at the time the first of those **claims** is made against any Insured.

b. Other than Claims-Made Insurance

This Insurance applies to **bodily injury** or **property damage** to which any **Underlying Insurance** written on other than a claims-made basis would apply but for exhaustion of its limits of liability but only if such **bodily injury** or **property damage** occurs during the policy period of this policy, and it is agreed that:

e. **Bodily injury** to:

(1) Any current officer, director, or employee of the Insured who is injured by any other officer, director or employee of the same Insured in the course of such employment; or

(2) Any current or former (a) officer, director or employee of the Insured, or (b) any applicant for employment by the Insured arising out of employment practices of the Insured, including wrongful dismissal or wrongful termination of any such officer, director or employee.

(3) The spouse, child, parent, brother or sister of that officer, director, employee or applicant for employment as a consequence of (1) or (2) above.

This exclusion applies:

(1) Whether the Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of such **bodily injury**.

This exclusion does not apply to liability assumed by the Insured under an **Insured Contract.**

f. (1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.

(a) That are, or that are contained in any property that is:

(i) Being moved from the place where such property or pollutants are accepted by the Insured for movement into or onto an **auto**;

(ii) Being transported or towed by an **auto**;

(iii) Otherwise in the course of transit;

(iv) Being stored, disposed of, treated or processed in or upon an **auto**; or

(v) Being moved from an **auto** to the place where such property or pollutants are finally delivered, disposed of or abandoned by the insureds;

(b) At or from premises you own, rent or occupy;

(c) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations

(i) to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants; or

(ii) if the pollutants are brought on or to the site in connection with such operations; or

(e) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible.

(2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. **Waste** includes materials to be recycled, reconditioned or reclaimed.

Paragraphs (1) (a) (iv) through (1) (e) do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants

(2) Property loaned to you;

(3) Personal property in your care, custody or control;

(4) Premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the **property damage** arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph (4) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

Paragraph (5) and (6) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph (6) of this exclusion does not apply to **property damage** included in the **products-completed operations hazard**.

l. **Property damage** to **your product** arising out of it or any part of it.

m. **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. **Property damage** to **impaired property** or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss or use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

o. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) **Your product,**

(2) **Your work,** or

(3) **Impaired property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. Any liability arising out of your professional liability or for such liability for which one of your employees or any person you are responsible for is liable.

q. **Bodily Injury** or **Property Damage**:

(1) With respect to which an Insured under this policy is also an Insured under a nuclear liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

7. Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

8. **Property damage** includes all forms of radioactive contamination of property.

r. **Claims** for damages of **bodily injury** or **property damage** made by a Named Insured against any other Named Insured.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement

a. We will pay on behalf of the Insured the **Ultimate Net Loss** in excess of the **Retained Limit** because of **personal injury** or **advertising injury** to which this insurance applies. No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under SECTION II ---DEFENSE AND SUPPLEMENTARY PAYMENTS COVERAGES A and B. We have the right to defend any **claim** or **suit** against the insured seeking damages for **personal injury** or **advertising injury** to which this insurance applies, but:

(1) The amount we will pay for **Ultimate Net Loss** is limited as described in SECTION IV --- LIMIT OF INSURANCE;

(2) At our discretion, we may investigate and settle any **claim** or **suit**;

(3) We have a duty to defend any **claims** or **suits** not covered by any **Underlying Insurance** shown in the Declarations; and not otherwise excluded by this policy. We also have the duty to defend such **claims** or **suits** if the applicable limit of **Underlying Insurance** is exhausted; but

(4) Both our right and duty to defend any existing or future **suits** end when the applicable Limit of Insurance is exhausted in payment of judgments or settlements under Coverage A or B.

b. This insurance applies to **personal injury** only if caused by an offense;

(1) Committed in the **coverage territory** during the policy period of this policy; and

(2) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

c. This insurance applies to **advertising injury** only if caused by an offense committed:

(1) In the **coverage territory** during the policy period; and

(2) In the course of advertising your goods, products or services.

2. Exclusions

This Insurance does not apply to:

a. **Personal Injury** or **advertising injury:**

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

but only with respect to the conduct of your business.

c. An organization other than a partnership or joint venture, you are an Insured. Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an Insured:

a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, none of these employees is an Insured for:

(1) **Bodily injury** or **personal injury** to you or to a co-employee while in the course of his or her employment; or

(2) **Bodily injury** or **personal injury** arising out of his or her providing or failing to provide professional health care services; or

(3) **Property damage** to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

b. Any person (other than your employee) or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

e. Any other person or organization who is insured under any policy of **Underlying Insurance**. The coverage afforded such Insureds under this policy will be no broader than the **Underlying Insurance** except for this policy's Limit of Insurance.

f. Any person or organization for which you have agreed to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you.

3. With respect to:

a. Any **auto**, or

b. **mobile equipment** registered in your name under any motor vehicle registration law;

any person is an Insured while driving such **auto** or **mobile equipment** along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the **auto** or registered **mobile equipment**.

However, the owner or anyone else from whom you hire or borrow an **auto** is an Insured only if that **auto** is a trailer connected to an **auto** you own.

But no person or organization is an Insured under this paragraph 3 for:

a. **Bodily Injury** to a co-employee of the person driving the auto or **mobile equipment;** or

b. **Property Damage** to property owned by you or the employer of any person who is an insured under this provision; or

c. Any **auto** you hire or borrow from one of your partners, employees or members of their households, if they are the owner of such **auto**; or

d. any **auto** being used by a person employed in the business of selling, servicing, repairing or parking **autos** unless they

2. Bankruptcy

Bankruptcy, insolvency or receivership of the Insured, the Insured's estate or of any **Underlying Insurer** will not relieve us of our obligations under this policy. With regard to bankruptcy, insolvency receivership of any **Underlying Insurer** this policy shall not apply as a replacement of such bankrupt or insolvent Insurer and our Limit of Insurance will apply only in excess of the required Limit(s) of Insurance stated in the schedule of **underlying insurance.**

3. Cancellation

a. The first Named Insured shown in the Declarations may cancel this policy by delivering it to us or any of our authorized agents or by sending us written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to us or upon such future date requested by the first Named Insured.

b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) Ten (10) days before the effective date of cancellation if we cancel because of:

a. nonpayment of premium whether payable directly to us or payable to our agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan;

b. any bankruptcy or debtor relief proceeding brought by or against you; or

(2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered any refund of unearned premium.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of the policy upon our giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by us.

We shall not be bound by any assignment of interest by any insured unless our consent to such assignment is endorsed on to the policy.

5. Duties in the Event of **Occurrence**, **Claim** or **Suit**

a. You must see to it that we are notified as soon as practicable of an **occurrence** which may result in a **claim** under Coverage A; or an offense which may result in a **claim** under Coverage B of this policy. As completely as possible, notice should include:

(1) How, when, and where the **occurrence** or alleged offense took place;

(2) The Insured's name and address;

(3) The names and addresses of any injured persons or witnesses; and

(4) The nature and location of any injury or damage arising out of the **occurrence** or offense. Notice of an **occurrence** or an offense is not notice of a **claim**.

b. If a **claim** is made or **suit** is brought against any Insured, you must:

9. Maintenance of **Underlying Insurance**

You must keep **Underlying Insurance** described in Item 6 of the Declarations Page or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. You must also inform us within 30 days of any cancellation of any policy of **Underlying Insurance**, or replacement of any policy of **Underlying Insurance** by the **Underlying Insurer** or any other insurer.

Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.

You must notify us immediately of any changes to the terms of any **Underlying Insurance** policies. We may make adjustment of premium charges under this policy from the effective date of such changes to the terms of any **Underlying Insurance** policies.

10. Other Insurance

If other valid and collectible insurance is available to the Insured for **Ultimate Net Loss** we cover under this policy, our obligations under this policy are limited as follows:

a. Excess Insurance

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance.

We will pay only our share of the amount of **Ultimate Net Loss**, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under this or any other insurance.

b. We will have no duty under Coverage A or B to defend any **claim** or **suit** that any other insurer has a duty to defend. If no other insurer defends, we may undertake to do so, but we will be entitled to the Insured's rights against all other insurers.

11. Premium Audit

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

12. Premiums

The first Named Insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

13. Representations

By accepting this policy, you agree that:

a. The information shown on the Declarations Page is accurate and complete;

b. The information is based upon representations you made to us in your application(s) for this policy;

b. A summary by policy year, of amounts paid and amounts reserved, stated separately, under any applicable Policy Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

If we cancel or elect not to renew this policy, we will provide such information not later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the policy period. In this case, we will respond within 45 days of receipt of the request.

We compile **claim** and **occurrence** information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any Insured. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

20. When Loss Payable

Our liability for any portion of **Ultimate Net Loss** shall not apply until the Insured or any **Underlying Insurer** shall be obligated to pay the **Retained Limit**. When **Ultimate Net Loss** has been determined, payment will be made under this policy as soon as practicable thereafter. Such Insured's obligation to pay any amount of **Ultimate Net Loss** shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and us.

## SECTION VI --- EXTENDED REPORTING PERIODS ---- COVERAGE A

This Section applies only to Claims-Made Insurance under Coverage A

1. We will provide one or more Extended Reporting Periods as described below, for Claims-Made Coverage as is afforded under Coverage A of this policy if:

   a. This policy or a specific claims-made coverage included in this policy, is excluded, cancelled or not renewed by you or us; or

   b. We renew or replace this policy with Insurance:

      (1) Which provides claims-made coverage with a **Retroactive Date** later than the **Retroactive Date** shown in Item 4 of the Declarations Page of this policy; or

      (2) Which does not apply to **bodily injury** or **property damage** on a claims-made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

   a. Five years for **claims** arising out of an **occurrence** reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 5.a. of SECTION V - COMMERCIAL EXCESS POLICY CONDITIONS; or

   b. Sixty days for all other **claims**.

   The Basic Extended Reporting Period does not apply to **claims** that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such **claims**.

3. A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts:

   a. Five years after the end of the policy period for **claims** arising out of an **occurrence** reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 5 a. of SECTION V - COMMERCIAL EXCESS UMBRELLA POLICY CONDITIONS; or

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement upon another's copyright, trade dress or slogan.

2. **Auto** means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. But **auto** does not include **mobile equipment**.

3. **Automobile Hazard** means any liability for **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, **loading or unloading** of any automobile.

4. **Bodily Injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. **Claim** means any demand upon the Insured for damages or services including the service of **suit** papers or arbitration proceedings against the Insured for damages or services alleging liability of the Insured as the result of an **occurrence** or offense which may or may not be covered by this policy. **Claim** does not include reports of accidents, or **occurrences**, or any acts, errors, offenses or omissions which may give rise to a **claim**.

6. **Coverage territory** means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of :

         (a) Goods or products made or sold by you in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

         (c) Personal injury and advertising injury offenses that take place through the Internet or similar electronic means of communication; and

      (2) The insured's responsibility to pay damages is determined in a **suit** on the merits, in the territory described in a. above or in a settlement we agree to.

7. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

   a. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of **your product** or **your work**; or

   b. Your fulfilling the terms of the contract or agreement.

8. **Insured contract** means:

to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers or similar devices used to raise or lower workers;

f. Vehicles not described in a.,b.,c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**;

(1) Equipment designated primarily for:

a. Snow removal;

b. Road maintenance, but not construction or resurfacing;

c. Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical explosion, lighting and well servicing equipment.

11. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

12. **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

13. a. **Products-completed operations hazard** includes all **bodily injury** or **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site;

(3) When all of the work done at the job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

24. **Your work** means:

    a. Work or operations performed by you or on your behalf; and

    b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performances of any of the items included in a. or b. above and the providing of or failure to provide warnings or instructions.

An **Insured contract** does not include that part of any contract or agreement;

a. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

   (2) Giving directions or instructions, or failing to give them, if that is the primary cause of injury or damage;

b. Under which the Insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in a. above and supervisory, inspection or engineering services;

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

**A.** Exclusion j. under Paragraph 3. Exclusions of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

**3. Exclusions**

This insurance does not apply to:

**j. War**

**Bodily injury** or **property damage**, however caused, arising directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph 2. Exclusions of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

**Personal injury** or **advertising injury**, however caused, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.


Includes copyrighted material of ISO Properties, Inc. with their permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AIRCRAFT, UNMANNED AIRCRAFT AND WATERCRAFT LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY

Exclusion h. is deleted and replaced by the following:

**Bodily injury, property damage, personal injury** or **advertising injury** arising out of the ownership, maintenance, operation, use, **loading or unloading** or entrustment to others of any aircraft, **unmanned aircraft** or watercraft.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the **occurrence** which caused the **bodily injury, property damage, personal injury** or **advertising injury** involved the ownership, maintenance, operation, use, **loading or unloading** or entrustment to others of any aircraft, whether manned or unmanned, or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** Watercraft while ashore on premises you own or rent;
**(2)** Watercraft you do not own that are:
  **(a)** Less than 51 ft long; and
  **(b)** Not being used to carry persons or property for a charge.
**(3)** Liability assumed under any **Insured Contract** for the ownership, maintenance or use of aircraft, **unmanned aircraft** or watercraft.

**Unmanned aircraft** as used in this exclusion is defined as follows:
**Unmanned aircraft** means an aircraft that is not:
**1.** Designed;
**2.** Manufactured; or
**3.** Modified after manufacture;
to be controlled directly by a person from within or on the aircraft.

 Includes copyrighted material of Insurance Services Office, Inc. with its permission 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

**A.** The following is added to Paragraph 3. Exclusions of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**3. Exclusions**

This insurance does not apply to:

**Asbestos or Asbestos Related Products**

**a. Bodily injury** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **asbestos**, in any manner or form, or in combination with any other factors, substances or events.

**b. Property damage** arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, **asbestos** or products containing **asbestos**.

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, manufacturing, sale, storage, transportation, control, dispersal, release, leakage, removal or disposing of, or in any way responding to or assessing the effects of, **asbestos** or products containing **asbestos**, by any Insured or by any other person or entity.

**d.** Any other **claim** for damages, demands, costs, expenses or reimbursement of costs or expenses relating to or arising from **asbestos**.

However, this exclusion does not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire.

**B.** The following exclusion is added to Paragraph 2. Exclusions of **SECTION I – COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos or Asbestos Related Products**

**a. Personal injury** or **advertising injury** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **asbestos**, in any manner or form, or in combination with any other factors, substances or events.

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, manufacturing, sale, storage, transportation, control, dispersal, release, leakage, removal or disposing of, or in any way responding to or assessing the effects of, **asbestos** or products containing **asbestos**, by any Insured or by any other person or entity.

**c.** Any other **claim** for damages, demands, costs, expenses or reimbursement of costs or expenses relating to or arising from **asbestos**.

**C.** The following definition is added to **Section VII - DEFINITIONS**:

**Asbestos** For the purpose of this exclusion, **asbestos** means any type or form of **asbestos**, including but not limited to **asbestos** products or goods, **asbestos** fibers, **asbestos** materials, and any dusts, gases, by-products, vapors, or odors that are released or produced by **asbestos** or **asbestos** products, goods, fibers or material.


Includes copyrighted material of ISO Properties, Inc. with their permission. © ISO Properties, Inc. 2004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUBLIC OR LIVERY PASSENGER CONVEYANCE AND ON-DEMAND DELIVERY SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

**A.** The following is added to **3. Exclusions of SECTION I, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**
This insurance does not apply to:
**Public Or Livery Passenger Conveyance And On-demand Services**
Any covered **auto** while being used:
  1. As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered **auto** is being used by an insured who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the covered **auto**, or
  2. By an insured who is logged into a **transportation network platform** or **delivery network platform** as a driver to provide **delivery services**, whether or not the goods, items or products to be delivered are in the covered **auto**.

**B.** The following **Additional Definitions** are being added to **SECTION VII – DEFINITIONS**:
As used in this endorsement:
  1. **Delivery network platform** means an online-enabled application or digital network used to connect customers:
     a. With drivers; or
     b. With local vendors using drivers;
     for the purpose of providing prearranged **delivery services** for compensation. A **delivery network platform** does not include a **transportation network platform**.
  2. **Delivery services** include courier services.
  3. **Occupying** means in, upon, getting in, on, out or off.
  4. **Transportation network platform** means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

 Includes copyrighted material of Insurance Services Office , Inc., with its permission. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT - KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

The following is added to the Insuring Agreement of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the Insured against any **suit** seeking those damages. However, we will have no duty to defend the Insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may, at our discretion, investigate any **occurrence** and settle any **claim** or **suit** that may result. But:

**(1)** The amount we will pay for damages is limited as described in Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under the policy.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to **bodily injury** and **property damage** only if:

**(1)** The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

**(2)** The **bodily injury** or **property damage** occurs during the policy period; and

**(3)** Prior to the policy period, no insured or no **employee** authorized by you to give or receive notice of an **occurrence** or **claim**, knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a listed Insured or authorized **employee** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

**c.** **Bodily injury** or **property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any Insured or any **employee** authorized by you to give or receive notice of an **occurrence** or **claim**. This includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the policy period.

**d.** **Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any Insured or any **employee** authorized by you to give or receive notice of an **occurrence** or **claim**:

**(1)** Reports all, or any part, of the **bodily injury** or **property damage** to us or any other Insurer;

**(2)** Receives a written or verbal demand or **claim** for damages because of the **bodily injury** or **property damage**; or

**(3)** Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.

**e.** Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury.**


Includes copyrighted material of Insurance Services Office, Inc. with their permission. © Insurance Services Office, Inc. 1998

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

**A.** The following exclusion is added to Paragraph **3. Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**3. Exclusions**

This insurance does not apply to:

**Communicable Disease**

**Bodily injury** or **property damage** arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the **claims** against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

**Personal injury** or **advertising injury** arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the **claims** against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.


Includes copyrighted material of ISO Properties, Inc. with their permission. © ISO Properties, Inc. 2008

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

**A.** The following is added to Paragraph 3. Exclusions of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** as follows:

**3. Exclusions**

**FUNGI OR BACTERIA**

**a. Bodily injury** or **property damage** which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, **fungi** or bacteria, by any Insured or by any other person or entity.

This exclusion does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph 2. Exclusions of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a. Personal injury** and **advertising injury** which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, **fungi** or bacteria, by any Insured or by any other person or entity.

**C.** The following definition is added to **Section VII - Definitions**:

**Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 **Includes copyrighted material of ISO Properties Inc with its permission**
**© ISO Properties, Inc., 2002** 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXTERIOR INSULATION AND FINISH SYSTEM (EIFS) EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

The following is added to Paragraph 3. Exclusions of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph 2., Exclusions of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

(1) Any **bodily injury**, **property damage, personal injury** or **advertising injury** arising out of or caused by the actual or alleged design, preparation, fabrication, correction, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an **exterior insulation and finish system** (commonly referred to as synthetic stucco or EIFS) or any part thereof or a similar system or any part thereof, including the use or application of primers, conditioners, flashings, coatings, caulking, sealants or other accessories in connection with this type of system.

(2) Any **bodily injury**, **property damage, personal injury** or **advertising injury** arising out of or caused by **your work**, performed by you or on your behalf, with respect to any exterior component, fixture or feature of any structure if an **exterior insulation and finish system** is used on any part of the structure.

(3) Any **bodily injury** or **property damage** arising out of **your work** performed by you or on your behalf and included in the **products-completed operations hazard** with respect to any exterior feature, fixture or component of any structure if an **exterior insulation and finish system** or any substantially similar system was used on any part of that structure.

For the purpose of this exclusion endorsement, an **exterior insulation and finish system** means a multi-layered exterior barrier-type finishing system designed to prevent moisture intrusion into exterior walls usually consisting of:

(a) an insulation board or panels of expanded polystyrene foam insulation or other material installed with adhesive or mechanically fastened to the substrate, usually plywood or oriented strand board;
(b) a reinforced base coat over the foam insulation panels;
(c) a fiber reinforcing mesh over the polystyrene insulation panels and fully imbedded in the base coat, and
(d) a protective finishing coat over the base coat and reinforcing mesh providing surface texture or color.

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. **Other act of terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a **certified act of terrorism**.

Multiple incidents of an **other act of terrorism** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. This exclusion applies unless such liability is covered by valid and collectible **underlying insurance** listed in the Schedule of **Underlying Insurance**, and then only for such liability for which coverage is afforded under the **underlying insurance**.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

D. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.


Includes copyrighted material of Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT- RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

It is agreed that:

1. Exclusion 3.e. of **SECTION I - INSURING AGREEMENTS; COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** is deleted and replaced by the following:

   e. **Bodily Injury**:

      (1) To any current officer, director or employee of the Insured who is injured by any other officer, director or employee of the same Insured in the course of such employment; or
      (2) To the spouse, child, parent, brother or sister of that officer, director or employee as a consequence of (1) above.
      (3) Arising out of any refusal to employ;
      (4) Arising out of any termination of employment;
      (5) Arising out of any coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
      (6) To the spouse, child, parent, brother or sister of any applicant for employment, current or former employee, director or officer as a consequence of (3) through (5) above.

      This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

      Paragraphs (1) and (2) of this exclusion do not apply to liability assumed by the Insured under an **Insured Contract.**

2. Exclusion 2.a. of **SECTION I - INSURING AGREEMENTS; COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**, is deleted and replaced by the following:

   a. **Personal Injury** and **Advertising Injury:**

      (1) Arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity;
      (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
      (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the Insured; or
      (4) For which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement.
      (5) To any officer, director or employee of the Insured arising out of and in the course of that person's employment by the Insured.
      (6) Arising out of any refusal to employ;
      (7) Arising out of any termination of employment;
      (8) Arising out of any coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation discrimination or other employment-related practices, policies, acts or omissions; or
      (9) To the spouse, child, parent, brother or sister of any applicant for employment, current or former employee, director or officer as a consequence of (5) through (8) above.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a **certified act of terrorism** that are awarded as punitive damages.

**B.** The following definition is added:

1. **Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

 Includes copyrighted material of Insurance Services Office, Inc. with its permission 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

**A.** The following is added to Paragraph **3., Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**3. Exclusions**

This insurance does not apply to:

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW**

**Bodily injury** or **property damage** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**c.** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** The following is added to Paragraph **2., Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW**

**Personal injury** or **advertising injury** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**c.** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.


Includes copyrighted material of ISO Properties, Inc. with their permission. © ISO Properties, Inc. 2008

# ADVISORY NOTICE TO POLICYHOLDERS

## LEAD LIABILITY EXCLUSION

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

**PLEASE READ YOUR POLICY, AND THE ENDORSEMENTS ATTACHED TO YOUR POLICY, CAREFULLY.**

Your policy excludes coverage for claims resulting or arising from lead contamination.

You should be aware that the ingestion of lead paint by young children can potentially result in serious brain damage. We suggest you determine if lead hazards exist on your premises and, if so, promptly see that they are removed.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA AMENDATORY ENDORSEMENT – CANCELLATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

It is agreed that **Section V – Commercial Excess Umbrella Policy Conditions**, Item 3. Cancellation is amended as follows:

Item b. is deleted and replaced with the following:

b. Cancellation by us

1. Cancellation of Policies in Effect Less than 60 Days

   If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least

   (a) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (b) 30 days before the effective date of cancellation if we cancel for any other reason.

2. Cancellation of Policies in Effect for 60 Days or More

   If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

   (a) Expiration of the policy term; or

   (b) Anniversary date,

   stated in the policy only for one or more of the following reasons:

   (1) Nonpayment of premium;

   (2) An act or omission by the Insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy or presenting a claim under this policy;

   (3) Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

   (4) Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

   (5) A fraudulent act against us by the Insured or his or her representative that materially affects the insurability of the risk;

   (6) Willful failure by the Insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

   (7) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

   (8) Conviction of the Insured of a crime arising out of acts that materially affect the insurability of the risk;

   (9) A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA AMENDATORY ENDORSEMENT EXTENDED REPORTING PERIODS

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

If an Extended Reporting Period endorsement or Supplemental Extended Reporting Period endorsement is attached to this policy, the Aggregate Limit of Insurance that applies to the Extended Reporting Period or the Supplemental Extended Reporting Period will be equal to the Aggregate Limit in effect at the inception of the policy period of the policy to which the Extended Reporting Period or Supplemental Reporting Period endorsement is attached.

If you purchase an Extended Reporting Period, you shall be provided, within 45 days of the mailing or delivery of your written request, the following loss information covering a three year period:

**a.** Aggregate information on total closed **claims** including the date and description of any **claims** and any paid losses;

**b.** Aggregate information on total open **claims** including the date and description of any **claims** and the amounts of any payments;

**c.** Information on notice of any **claims** including the date and description.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA AMENDATORY ENDORSEMENT NON-RENEWAL

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

It is agreed that **Section V – Commercial Excess Umbrella Policy Conditions**, Item 18. When We Do Not Renew is deleted and replaced by the following:

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than **45** days before the expiration date or such other period as may be required by law.

If notice is mailed, proof of mailing will be sufficient proof of notice.

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

# IMPORTANT POLICYHOLDER INFORMATION CONCERNING BILLING AND POLICY FEES

The purpose of this Policyholder Notice is to provide you with important information about our billing practices that may affect you and fees that may apply under certain circumstances.

**Billing Options:** Depending on the type of billing your agent has selected you may be billed separately by either the agent or by the company. All policies issued by one of the Harford Mutual Insurance Companies are eligible to be placed on an installment plan.

**Company Billing:** If you are being billed by the company, you will be assigned a six digit client number. This billing customer number should be used for each policy on the direct bill plan and on all correspondence regarding your bill. Depending on the payment plan chosen, you may receive a bill once a month on the same day each month during the payment period with one statement for all policies that are linked by billing customer number under the company Direct Bill plan. Payment plans are available if you elect to pay on installments.

**Payment Plans:** If you elect to pay your premium in full there are no installment charges applied to your policy. If you elect to pay your premiums in installments using one of our payment plans, a billing installment fee of **$5.00** will apply at a policy level to all installments except the first installment. It is recommended that all policies for the same insured have concurrent policy dates and utilize the same payment plan.

**Late Fee:** If we do not receive the minimum amount of payment due on or before the due date, as indicated on your billing notice, a non-payment of premium cancellation notice will be issued with a future effective date. A **$10.00** late fee will apply at a policy level whenever a non-payment of premium notice is processed.

**Reinstatement Fee:** If we reinstate coverage after the policy has been cancelled we will add a **$25.00** reinstatement fee.

**Dishonored Check Fee:** If your payment is made by check and your financial institution refuses to honor the premium payment, due to insufficient funds in your account or for some other reason, a **$25.00** non-sufficient fund check fee will apply.

**Endorsements:** All endorsements, both additional and return premiums, will be spread over the remaining installment payment periods based on the effective date of the endorsement. If an endorsement is processed with a retroactive effective date, the impact on the next billing statement will be greater than the impact on the remaining installments.

Please review this information and contact your agent or the company if you have questions or need additional information about the billing and policy fees.

**Thank you for choosing one of The Harford Mutual Insurance Companies for your insurance coverage.**

HARFORD MUTUAL
COMMITTED TO MUTUAL SUCCESS

## Customer Privacy Policy

Since 1842, Harford Mutual Insurance Company has been committed to the mutual success of our policyholders, agencies and local community. It is because of this commitment that we are dedicated to protecting the confidentiality of our customers' Nonpublic Personal Information (NPI). We take this opportunity to share our procedures and policies designed to safeguard your information, which may be obtained in the course of our business relationship with you.

This notice serves to explain: what type of information we collect; how we collect it; what we do with it after we collect it; how we safeguard your privacy; and how you may obtain information, if any, about your NPI. We will inform you concerning these policies in this notice and every year that you remain our customer.

### Our Privacy Policy

- We do not sell your NPI.
- We do not share your NPI with nonaffiliated third parties other than as necessary to service your policy or claim.
- We do not share your health or financial information, except as authorized by law.
- We use your NPI only to service your policies, claims and to meet your needs as they have been described to us.
- We will require that persons or organizations providing goods or services to you on our behalf protect the confidentiality of your NPI.
- We protect your NPI regardless of whether you are a current or a former customer.
- We maintain physical, electronic and procedural safeguards to protect your NPI from disclosure.

### How We Collect Information

We collect and retain information about you to provide you with the coverage, product, or service you request, or to service your account as permitted by law, and as needed to conduct business. We collect your NPI from the following sources:

- Your application for insurance or similar forms;
- Consumer reporting agencies, motor vehicle records, credit reports, claims history, loss information reports, court records or other public records; property inspections to verify value and condition for property insurance; or
- Your insurance agent.

### Information We Collect About You

Harford Mutual gets most of its information from your application for insurance or from your insurance agent. This includes, for example, your name; address; social security number; financial account or credit card information; vehicle type; credit based insurance score; a report about your coverage and claims history with other companies and motor vehicle records, to name a few.

For property and liability insurance, we may send someone to inspect your property and verify the value and condition of your property. A photo of any property to be insured may be taken and retained. We may also obtain reports concerning the square footage of your property from companies that collect such data.

For workers' compensation insurance, we may send someone to perform an audit or accounting of your business records to ensure that you are getting the appropriate premium charge.

### What We Do With the Information Collected

Harford Mutual uses your information only as permitted by law. We may use your information to: service products you have purchased; underwrite your policy; process claims; protect against fraud; and comply with legal requirements.

Information collected is maintained in either our policy records or in your agent's files. We may review it to evaluate requests for insurance coverage or to determine your insurance rates. Your information may also be used to decide whether to issue a renewal policy or settle a claim.

If coverage is declined, or if your rates increase because of information we received from a consumer report, we will tell you as required by the Fair Credit Reporting Act.

HARFORD MUTUAL

COMMITTED TO MUTUAL SUCCESS

November 27, 2019

Spencer L. Hill
Bowden & Gardner, P.C.
199 Brookstown Avenue, Suite 401
Winston Salem, NC 27101

| | | |
|---|---|---|
| RE: | HMIC Claim Number | : 249863 |
| | Policy Number | : 7981019 |
| | Insured | : Big Boss Construction, Inc. |
| | Date of Loss | : 10/27/2018 |
| | Claimants | : Jamya Haith, Emmonie Haith |

Dear Mr. Hill:

Please allow this letter to confirm our conversation of Tuesday, November 19, 2019. You tendered an auto claim under the Harford Mutual Commercial Excess Umbrella Policy for Big Boss Construction, Inc., Policy Number 7981019, with Policy Period August 26, 2018 through August 26, 2019. That Policy only lists under its Schedule of Underlying Insurance Harford Mutual Insurance Company General Liability Policy 9178686.

Upon reviewing the *Haith* Complaint, it is Harford Mutual's determination that no coverage exists for claims asserted in the Complaint under Commercial Umbrella Policy 7981019. Harford Mutual's Commercial Umbrella Policy does not contain any other policies in the Schedule of Underlying Insurance other than the General Liability Policy. This Policy also contains Exclusion HMU 34C 05 06, Automobile Liability Exclusion, a copy of which has been attached to this letter.

As an insurer, The Harford Mutual Insurance Company is not responsible for every lawsuit that may be instituted against an insured. We can only respond to suits seeking damages arising out of matters to which our insurance applies. We have concluded the allegations in the lawsuit do not fall within the terms, conditions, definitions and other limiting language in the policy or are specifically excluded in the Policy identified above.

This letter is not intended to be an exhaustive analysis of your insurance coverage with us. In setting forth the specific limitations that require us to decline your request for indemnity, we are not waiving other defenses available to us under the Policy. Harford specifically reserves the right to raise any and all such defenses that may be available to us.

PLAINTIFF'S EXHIBIT 5

200 NORTH MAIN STREET, BEL AIR, MARYLAND 21014-3544 ■ T (410) 838 4000 F (410) 838 8675 ■ HARFORDMUTUAL.COM