IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
J.H.,¹ et al.,                    )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )     1:21cv856
                                  )
HARFORD MUTUAL INSURANCE,         )
GROUP, INC., et al.,              )
                                  )
          Defendants.             )
```

## MEMORANDUM OPINION AND ORDER

The Court recently resolved the parties' competing motions for judgment on the pleadings. (See Docket Entry 39 (the "Opinion") at 1-38.)² As relevant here, Plaintiffs' Amended Complaint sought (A) "a judgment declaring that Harford Mutual has an obligation under the [Big Boss Excess Policy and the NC Champions Policy] to make payments to Plaintiffs as entered in the Underlying Action," (B) "a declaration of the amount to be paid under each policy," and (C) "[p]re-judgment and post-judgment interest as provided by law." (Docket Entry 22 at 16-17.) As further relevant here, in briefing the cross-motions, Plaintiffs asserted that "Defendant must pay

---

1 Federal Rule of Civil Procedure 5.2(a)(3) mandates the use of initials when referring to J.H. and E.H., minors. Further, for legibility purposes, this Opinion omits the word "the" in front of "Plaintiffs" and "Defendants."

2 Pursuant to the parties' consent, Chief United States District Judge Thomas D. Schroeder referred this case to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 38 at 1.) [Docket Entry page citations utilize the CM/ECF footer's pagination.]

$2,000,000.00 to [them] under the Big Boss [Excess Policy]" (Docket Entry 31 at 19), to which Defendants responded: "The amount of coverage under any policy is not in dispute and has been clearly established by stipulation. The only dispute is whether coverage exists at all." (Docket Entry 34 at 14 n.2.)[3] For the reasons specified in the Opinion, the Court granted in part and denied in part the cross-motions, ruling that "judgment shall be entered in Plaintiffs' favor for $2 million under the Big Boss Excess Policy, but Plaintiffs shall take nothing under the NC Champions Policy." (Docket Entry 39 at 37.) The Court further ordered "Defendants [to] show cause why the judgment should not include pre-judgment and post-judgment interest." (Id.) Having fully considered the parties' submissions and the relevant law, the Court will award prejudgment and post-judgment interest as specified herein.

## A. Prejudgment Interest

Defendants removed this action to federal court on the basis of diversity jurisdiction. (See, e.g., Docket Entry 1 at 2.) "State law governs the award of prejudgment interest in a diversity case." Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 311 (4th Cir. 2020) (internal quotation marks omitted). North Carolina

---

3 Notably, in briefing the cross-motions, Defendants never asserted entitlement to any credit against the "Upfront Monies" (Docket Entry 22-6 at 3 (all-cap and bold font omitted)) paid pursuant to the Litigation Agreement (see Docket Entries 28, 29, 34, 36).

2

General Statute Section 24-5 governs prejudgment interest and provides that, as relevant here:

> any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied. . . . Interest on [such] an award . . . shall be at the legal rate.

N.C. Gen. Stat. § 24-5(b);[4] see Nationwide Mut. Ins. Co. v. Mabe, 342 N.C. 482, 489-90, 467 S.E.2d 34, 38-39 (1996). Notwithstanding this provision, the North Carolina Supreme Court has explained, "the language of a liability carrier's policy controls the liability carrier's obligation to pay prejudgment interest in addition to its stated limits." Nationwide, 342 N.C. at 490, 467 S.E.2d at 39.

The Big Boss Excess Policy provides, in pertinent part:

> When we have the duty to defend, we will indemnify the insured for:
>
> \*\*\*\*\*
>
> 5. Pre-judgment interest awarded against the Insured on that part of any judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a claim or suit, we will not indemnify the Insured for any pre-judgment interest imposed or earned after the date of such offer.
>
> 6. All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have indemnified the Insured, offered to indemnify, or deposited in court that part of any

---

4 As relevant here, "the legal rate of interest shall be eight percent (8%) per annum for such time as interest may accrue, and no more." N.C. Gen. Stat. § 24-1.

3

judgment that is within the applicable Limit of Insurance.

<u>Payments under this section of the policy</u>, as well as payments for all expenses we incur, <u>will not reduce the Limit of Insurance</u>.

(Docket Entry 22-4 at 10 (emphasis added).)

Thus, the Big Boss Excess Policy explicitly provides for payment of prejudgment and post-judgment interest, even in excess of its insurance liability limit (see id.), rendering such prejudgment interest appropriate here, see <u>Nationwide</u>, 342 N.C. at 490, 467 S.E.2d at 39. Defendants' arguments to the contrary do not alter this conclusion.

To begin, Defendants argue that "[t]he language of the Policy does not permit payment of interest in excess of the policy limit." (Docket Entry 40 at 5 (bold font omitted).)[5] This argument ignores

---

5 In so doing, Defendants somewhat confusingly appear to argue that because, "[a]s part of the Litigation Agreement, Defendants offered the applicable limit of insurance in settlement of the Underlying Litigation" and "subpart 5 [of the Big Boss Excess Policy] states that Defendants will not be responsible for the payment of pre-judgment interest imposed after the date Defendants offer the applicable limit of insurance in settlement of a claim," "Defendants are not obligated to pay pre-judgment interest in excess of the Policy Limit." (<u>Id.</u> at 6.) This argument misses the mark. First, the referenced provision operates only to stop the accruing of prejudgment interest when the insurer offers its policy limits to settle a claim; it does not prevent the subsequent payment of prejudgment interest accrued prior to such event. (<u>See</u> Docket Entry 22-4 at 10.) Second, Defendants did not "offer the applicable Limit of Insurance in settlement of [Plaintiffs'] claim[s]" (<u>id.</u>) in the Litigation Agreement. (<u>See generally</u> Docket Entry 22-6.) Instead, Defendants entered into an agreement "to streamline the litigation" over "the merits of the insurance coverage issues" (<u>id.</u> at 2), conceding only that, "[i]f the Court determines that coverage exists under the Harford

4

the policy's explicit statement that "[p]ayments under th[e indemnification] section of the policy . . . will not reduce the Limit of Insurance" (Docket Entry 22-4 at 10). (See Docket Entry 40 at 5-6.) Accordingly, Defendants' policy language argument lacks merit.[6]

Defendants next argue that "North Carolina Law considers pre-judgment interest part of compensatory damages, which are not recoverable in excess of the applicable Policy Limit." (Id. at 6 (bold font omitted); see id. at 6-7.) The North Carolina Supreme Court has indeed "conclude[d] that interest paid to compensate a plaintiff for loss-of-use of the money during the pendency of a

---

insurance policy(ies), then the Harford Insurers are obligated to tender the limits of insurance under the policy or policies that provide coverage, if any, as determined by the Court, the amount of such limits to be decided by the Court" (id. at 4). Thus, "subpart 5" provides Defendants no relief here.

6  In their reply brief, Defendants additionally assert, for the first time, that "[t]he Policy only contemplates payment of judgment interest on a judgment" and, "[b]ecause no judgment has been entered [in the Underlying Litigation], the Supplementary Payments provision of the Policy does not apply." (Docket Entry 42 at 3 (bold font omitted); see id. at 2-4.) As an initial matter, "[t]he Parties [to the Litigation Agreement] agree[d] to a Consent Judgment against Big Boss, NC Champions, and Carlos Alberto Ramirez in the amount of $3,200,000.00, which is attached and incorporated as Exhibit A [to the Litigation Agreement]." (Docket Entry 22-6 at 2.) The existence of that Consent Judgment, regardless of its filing, undercuts Defendants' new argument. In any event, "[a] party waives an argument by failing to present it in its opening brief or by failing to develop its argument — even if its brief takes a passing shot at the issue." Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (brackets and internal quotation marks omitted). Because Defendants failed to develop such argument in their initial memorandum (see Docket Entry 40 at 1-8), they waived it, see Grayson, 856 F.3d at 316.

5

lawsuit is an element of that plaintiff's damages," explaining that "the plaintiff has been deprived of the use of funds to which plaintiff was entitled from the time of the injury resulting from the wrong giving rise to the claim for relief. The prejudgment interest statute merely recognizes this entitlement and provides for its recovery (in the case of a tort) from the date the plaintiff judicially demands payment by filing suit." Baxley v. Nationwide Mut. Ins. Co., 334 N.C. 1, 8-9, 430 S.E.2d 895, 900 (1993). Nevertheless, the North Carolina Supreme Court has also held that "a liability insurer's obligation to pay interest *in addition* to its policy limits is governed by the language of the policy." Id. at 6, 430 S.E.2d at 898 (emphasis in original); accord Nationwide, 342 N.C. at 491, 467 S.E.2d at 40 (explaining that "th[e North Carolina Supreme] Court will look to the specific terms of a policy in deciding whether a liability carrier is required to pay prejudgment interest in addition to its limit of liability"). Here, the Big Boss Excess Policy explicitly provides for payment of prejudgment (and post-judgment) interest beyond the limits of liability. (See Docket Entry 22-4 at 10.) As such, Defendants' compensatory damages contentions fall short.

Defendants additionally contend that "[t]he Litigation Agreement establishes a maximum amount Defendants must pay towards resolution of the Underlying Litigation" (Docket Entry 40 at 4 (bold font omitted)) and "was a settlement of the Underlying

6

Litigation and did not contemplate the payment of pre-judgment or post-judgment interest" (id. at 7 (bold font omitted)).  (See id. at 4-5, 7.)  To the contrary, the Litigation Agreement explicitly provides that

> it is the Parties' mutual intent that all coverage issues pending in the Declaratory Judgment Action, <u>including the issue of indemnification</u>, remain ripe. . . .  Further, all [d]efendants in the Underlying Action agree to assign all rights under the Harford Insurers' policies to [Plaintiffs] in order to enable them to recover money under the policies upon a determination in the Declaratory Judgment Action that there is coverage.  <u>The Harford Insurers specifically agree that th[e Litigation] Agreement</u> and the Covenant Not to Enforce Judgment <u>in no way relieve the Harford Insurers of any obligation to pay money under the policies</u>, in the event the Court determines that the policy or policies provide coverage.

(Docket Entry 22-6 at 4 (emphasis added).)  As noted, the Big Boss Excess Policy provides indemnification for prejudgment (and post-judgment) interest above the limits of liability.  (See Docket Entry 22-4 at 10.)  Thus, the Litigation Agreement specifically contemplates indemnification of Plaintiffs for prejudgment (and post-judgment) interest under the Big Boss Excess Policy above the $2 million policy limit, belying Defendants' contentions.  As such, Defendants' contentions on this front lack merit.

Defendants further maintain that the $25,000 in upfront money they paid under the Litigation Agreement should count against their $2 million obligation under the Big Boss Excess Policy.  (See Docket Entry 40 at 5-6.)  This argument fails.  To begin, Plaintiffs' Amended Complaint sought a determination of the amount

7

due under each insurance policy. (See Docket Entry 22, ¶ 89.)  In moving for judgment on the pleadings, Plaintiffs similarly sought a declaration that Defendants owed them a total of "$3,000,000" under the policies (Docket Entry 30 at 3), including $2 million under the Big Boss Excess Policy (see, e.g., Docket Entry 31 at 19 ("Defendant must pay $2,000,000.00 to Plaintiffs under the Big Boss [Excess Policy].")).  In response, Defendants did not assert a credit for the $25,000 paid pursuant to the Litigation Agreement (see Docket Entries 28, 29, 34, 36); instead, they stated that "[t]he amount of coverage under any policy is not in dispute and has been clearly established by stipulation" (Docket Entry 34 at 14 n.2; see also id. ("The only dispute is whether coverage exists at all.")).  Because Defendants failed to assert any entitlement to a $25,000 credit in briefing the cross-motions for judgment on the pleadings, they waived such argument.  See Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument — even if its brief takes a passing shot at the issue." (brackets and internal quotation marks omitted)).

Moreover, the Litigation Agreement does not support Defendants' new argument.  The Litigation Agreement recognizes Plaintiffs' entitlement to $3.2 million in personal injury damages arising from the underlying car accident, with allocations of

8

$3 million to Chambers and $100,000 each to E.H. and J.H. specified. (See Docket Entry 22-6 at 2, 22.) In paragraph 4, the Litigation Agreement provides for $200,000 in "Upfront Monies," including $25,000 from Defendants, "to be paid to Plaintiffs within 21 days of the execution of th[e] Litigation Agreement." (Id. at 3 (all-cap and bold font omitted).) Nowhere in the Litigation Agreement does it allocate the $25,000 to either insurance policy or provide that the $25,000 constitutes a credit against either policy. (See id. at 1-6.) Rather, in paragraph 5 it provides:

> The Parties hereby agree that the Harford Insurers may also be obligated to pay additional monies over the [$25,000] to Plaintiffs depending on the outcome of the Declaratory Judgment Action. If the Court determines that coverage exists under the Harford insurance policy(ies), then <u>the Harford Insurers are obligated to tender the limits of insurance under the policy or policies that provide coverage</u>, if any, as determined by the Court, the amount of such limits to be decided by the Court, but in no event shall the Harford Insurers be obligated to tender more than $1,000,000.00 under the NC Champions Policy (No. 9180396) and/or $2,000,000.00 under the Big Boss Excess Policy (No. 7981019).
>
> If the Court determines that there is not coverage under the Harford policies, then there will be no recovery by Plaintiffs over and above the amounts set forth in paragraph (4).

(Id. at 4 (emphasis added).)

To tender means to "[o]ffer (money) as payment." Tender, Oxford Dictionaries. Oxford University Press. https://premium.oxforddictionaries.com/definition/american_english/tender (accessed via Oxford Dictionaries Online on June 20, 2023). Thus, the Litigation Agreement envisions Defendants paying Plaintiffs $3 million if the Court determined coverage existed

9

under both insurance contracts, including $2 million under the Big Boss Excess Policy, bringing Plaintiffs' total to the $3.2 million amount that the parties agreed Plaintiffs were "entitled to recover . . . for [their] personal injury damages" (Docket Entry 22-6 at 22). (See id. at 2-4.) Therefore, reducing Plaintiffs' $2 million recovery under the Big Boss Excess Policy by $25,000 does not comport with the Litigation Agreement.

Finally, Defendants maintain — without further development (see Docket Entry 40 at 7-8) — that, "[s]hould the Court determine that pre-judgment interest applies, it should only be applied from the date of the filing of this declaratory judgment action and not from the date of the filing of the Underlying Litigation" (id. at 7). "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." West Va. v. United States, 479 U.S. 305, 310 n.2 (1987). Here, Plaintiffs' claims for personal injury damages accrued on October 27, 2018, the date of the car accident. (See Docket Entry 22-6 at 1.) They "ha[ve] been deprived of the use of funds to which [they were] entitled from the time of the injury resulting from the wrong giving rise to the claim for relief. [North Carolina's] prejudgment interest statute merely recognizes this entitlement and provides for its recovery (in the case of a tort) from the date [Plaintiffs] judicially

10

demand[ed] payment by filing suit." Baxley, 334 N.C. at 9, 430 S.E.2d at 900. Here, Plaintiffs judicially demanded payment for their injuries by filing suit against the underlying tortfeasors on October 2, 2019. (See Docket Entry 22, ¶ 20; Docket Entry 25, ¶ 20.) Awarding prejudgment interest from that date therefore best complies with North Carolina law as to prejudgment interest.[7]

In sum, Defendants must pay prejudgment interest on the $2 million they owe Plaintiffs under the Big Boss Excess Policy at an annual rate of eight percent from October 2, 2019, through the date of the judgment.

## B. Post-judgment Interest[8]

"Federal law, rather than state law, governs the calculation of post-judgment interest in diversity cases." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999). As relevant here, federal law provides:

---

7 Notably,

> [r]equiring [Defendants] to pay prejudgment interest [from this date] is not a harsh result since [Defendants] ha[ve] had the opportunity to invest the money during the pendency of the[se] suit[s]. In addition, it [wa]s within [Defendants'] power to stop the accrual of prejudgment interest by offering[, in settlement of Plaintiffs' claims, their] policy limit.

Baxley, 334 N.C. at 9, 430 S.E.2d at 900.

8 Defendants largely combined their interest arguments, raising no separate arguments against imposition of post-judgment interest. (See Docket Entries 40, 42.) For the reasons discussed above, and in light of 28 U.S.C. § 1961, those arguments afford Defendants no relief.

11

> (a) <u>Interest shall be allowed on any money judgment in a civil case recovered in a district court</u>. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.[9]
>
> (b) Interest shall be computed daily to the date of payment . . ., and shall be compounded annually.

28 U.S.C. § 1961 (emphasis added) (footnote omitted).

"The purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 835-36 (1990) (brackets and internal quotation marks omitted). In accord with this purpose, post-judgment interest applies to the entire amount of damages a plaintiff receives, including prejudgment interest. <u>See Quesinberry v. Life Ins. Co. of N. Am.</u>, 987 F.2d 1017, 1031 (4th Cir. 1993) (holding "that awarding post-judgment interest on the entire amount the court awarded [the plaintiff], including pre-judgment interest, most closely comports with the purpose of post-judgment interest articulated by the Supreme Court"); <u>see also Bioventus LLC v. Trindent Consulting Int'l, Inc.</u>, No. 1:18cv815, 2020 WL 13669789, at *2 (M.D.N.C. Dec. 23, 2020) ("Post-judgment

---

9 Per said notice, the current rate for judgments is 5.16%.

interest applies to the entire money judgment, including pre-judgment interest."), aff'd, No. 21-1336, 2022 WL 2702425 (4th Cir. July 12, 2022). As noted, "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment," 28 U.S.C. § 1961(a)(footnote omitted), and "shall be computed daily to the date of payment . . . [and] compounded annually," 28 U.S.C. § 1961(b).

"The Clerk will calculate post-judgment interest after the judgment is entered, using this well-established formula." Bioventus, 2020 WL 13669789, at *2.

## CONCLUSION

Defendants owe Plaintiffs prejudgment and post-judgment interest on the $2 million due under the Big Boss Excess Policy.

**IT IS THEREFORE ORDERED** that Defendants shall pay prejudgment interest on the $2 million due under the Big Boss Excess Policy at an annual rate of 8% from October 2, 2019, through the date of the judgment, and post-judgment interest thereafter, per day, pursuant to 28 U.S.C. § 1961 until the judgment is paid.

This 20th day of June, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**